**UNITED STATES of America, Plaintiff,**

v.

**Liborio BELLOMO, et al., Defendants.**

**No. 02 CR 140 LLG.**

United States District Court, E.D. New York.

March 13, 2003.

Flora Edwards, Dublirer Haydon Straci & Victor, New York, NY, for Plaintiff.

Paul Schoeman, U.S. Attorney's Office Criminal Division, Brooklyn, NY, for U.S.

## MEMORANDUM AND ORDER

GLASSER, District Judge.

Eight defendants named in a fourteen count indictment have moved this Court to issue orders granting them broad relief, entitlement to which they claim is warranted by Statute, Rule or precedent. The motions of each will be addressed separately with the exception of those in which two or more defendants have joined.

### I. *Vincent Gigante*

A. This defendant is named in six counts as follows:

*Count One:* Racketeering in violation of 18 U.S.C. § 1962(c) (hereafter RICO). He is then named in the following Racketeering Acts (hereafter RA):

RA One: Extortion Conspiracy in violation of 18 U.S.C. § 1951.

RA Two: Extortion in violation of 18 U.S.C. § § 1951 and 2.

. RA Six (A) and (B): Obstruction of Justice in violation of 18 U.S.C. § 1512(b)(1); 1503 and 2.

*Count Two:* Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d).

*Count Three:* Extortion Conspiracy in violation of 18 U.S.C. § 1951.

*Count Four:* Extortion in violation of 18 U.S.C. § § 1951 and 2.

*Count Six:* Obstruction of Justice in violation of 18 U.S.C. § 1512(b)(1).

*Count Seven:* Obstruction of Justice in violation of 18 U.S.C. § 1503 and 2.

B. His motions.

1. *He has moved this Court for an order pursuant to Fed. R. Cr. Pr. 12(b)(2) that would dismiss Counts One and Two or, in the alternative, strike from it RA Six.*

Rule 12(b)(2) permits a party to raise, pretrial, "any defense, objection, or request that the court can determine without a trial" and his motion to dismiss Counts One and Two are appropriately made in accordance with that Rule. Before discussing the basis for making it, an understanding of the backdrop against which it is made is crucial.

The Counts of the indictment are preceded by sixteen introductory paragraphs which are surely familiar to courts, prosecutors and the criminal defense bar in cases in which the RICO enterprise is alleged to be an organized crime family. The enterprise alleged here is the Genovese Organized Crime Family whose leaders, members and associates engaged in a variety of racketeering activities defined in 18 U.S.C. § 1961(1), some of which are identified as illustrative. The structure of that enterprise is then described and hardly needs elaboration beyond simply referring to the boss, the underboss, the consigliere, captains of crews, members and associates. The principal purpose of this enterprise is alleged to be making money for its members and associates through racketeering activity.

Vincent Gigante is alleged to be and since the 1980's has been the boss of the Genovese Organized Crime Family. Liborio "Barney" Bellomo is alleged to have been the acting boss of the Family between 1988 and 1996. Ernest Muscarella is alleged to have been the acting boss of the Family between the fall of 2000 and the date of filing this indictment, February 1, 2002, and prior thereto was a captain. Charles Tuzzo is alleged to be a captain, Pasquale Falcetti and Michael Ragusa are alleged to be members and Thomas Cafaro and Andrew Gigante are alleged to be associates of the Family.

The bases upon which the motion is made are (1) RAs Six (A) and (B), the Obstruction of Justice charges, fail to satisfy the requirements of the "relatedness" necessary to sustain a RICO charge given that the purpose of the enterprise is alleged to be to make money for its leaders, members and associates, and (2) RAs One and Two, the Extortion and Extortion Conspiracy charges, "for purposes of racketeering activity, actually amount to one inseparable act." Def's. Mem. at 2. Each of those bases will be discussed in turn.

*Discussion*

(a) The "relatedness" issue:

Section 1962(c) provides, in a nutshell, that it is unlawful for a person associated with an enterprise to participate in conducting the affairs of the enterprise through a pattern of racketeering activity. It is one thing to put § 1962(c) in a nutshell, it is another thing to keep it there. Every word of that statute—"affairs," "participate," "conduct," "through," "pattern," has been the subject of microscopic scrutiny, judicial and extrajudicial, which already fills volumes and will, confidently, fill still more. This exploration of the etymological derivation of each of those words and the semanticism surrounding them have given birth to a dizzying array

of sophisticated rules qualified by subtle nuances and Talmudic distinctions which have provided grist for the searching minds of judges, lawyers and commentators all with a view towards divining an assumed intent in the mind of the legislative draftsman of the statute. A cursory view of a computerized "Shepard's" of that statute revealed upwards of 10,000 reported cases.

To collect and recite even a minute sampling of those cases which either announced or grappled with proclaimed prerequisites such as "nexus," "horizontal relatedness," "vertical relatedness," "continuity," "pattern of racketeering activity," "conduct or participation in the affairs of," would be an ambitious exercise if not an exercise in intellectual frustration and provide such guidance as the Court may wish them to provide in arriving at a decision.[1]

A realistic, common sense appraisal of the allegations of the indictment and the assertion advanced by this defendant for the relief he seeks, uncluttered by a variegated string of citations, will more directly and swiftly lead to a conclusion.

■ (b) His view is that "given the specific purpose of the enterprise alleged, which is to make money, it is clear that the claimed obstruction of justice [RAs 6A and B] fails to satisfy the requisite criteria of relatedness, both to the enterprise and to the remaining acts of racketeering." Def's. Mem. at 2. This view is as unpersuasive as it is disingenuous.

The introductory paragraphs of this indictment allege that Vincent Gigante was the boss of the Genovese family from the 1980's through the filing of it. Par. 5. It alleges that the boss sets policy, resolves disputes between members of the Genovese family and members of other criminal organizations and approves all significant actions by members of the Genovese family. Par. 4. Even while imprisoned, Vincent Gigante remained the boss although the day to day leadership of the family passed to a committee (the "Administration") with whom Vincent Gigante communicated through intermediaries and whose approval was required in administering the affairs of the family. Pars. 5 and 6.

It requires no leap of logic to conclude that if Vincent Gigante had succeeded in obstructing justice and thus avoided a conviction of the serious crimes with which he was charged, he would have been able to continue to function as the hands-on boss of the Genovese family, unimpeded by the bars of a prison cell and the other limitations imprisonment imposes upon the free, unfettered and unsupervised conduct of one's affairs. That the presence of every conceivable prerequisite for a RICO violation whether it be "relatedness," "nexus," "continuity," "participation in the affairs of," which his obstruction of justice would have satisfied requires no elaboration simply because every facet of the affairs of the enterprise are dominated by the boss and that attempt to avoid prosecution was inter-related horizontally, vertically and

---

1. If one objective of precedent is to provide some guidance for future conduct with relative assurance that such conduct is within the law, the precedents in this area have missed the mark by a wide margin. In her concurring opinion in *Scheidler v. NOW*, 537 U.S. 393, 123 S.Ct. 1057, 154 L.Ed.2d 991 (2003), Justice Ginsburg had occasion to observe that

"It [the RICO statute] has already 'evolv[ed] into something quite different from the original conception of its enactors'" *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 500, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), warranting 'concern[s] over the consequences of an unbridled reading of the statute,' *id.*, at 481, 105 S.Ct. 3275.

diagonally, should that be added to the list of prerequisites on another day.

(c) He contends that RAs One and Two, Extortion Conspiracy and Extortion, are acts "which, as a result, at least for purposes of racketeering activity, actually amount to one inseparable act" citing *United States v. Long,* 917 F.2d 691, 698 fn. 7 (2d Cir.1990). Assuming that RAs One and Two are deemed one inseparable act, it would follow that there would remain just one RA and, therefore, the "pattern" requisite would not be satisfied and the dismissal of Counts One and Two would be compelled.

Having concluded that the predicate acts of Obstruction of Justice satisfy all the necessary prerequisites, the "pattern" prerequisite is also satisfied. The alleged status of Vincent Gigante as boss of the Genovese Organized Crime Family makes him the sun around which all the planetary criminal activities revolve and makes Counts One and Two viable.

(d) His request for relief in the alternative, namely, that RA 6 should be stricken, is premised upon the inability to prove that Vincent Gigante "would have agreed to commit at least two racketeering acts which are 'vertically related' to the theorized enterprise—a clear prerequisite to a valid RICO conspiracy charge ... Count Two also cannot stand" and "Alternatively for the same reasons, ... Racketeering Act Six should be stricken from the RICO charges." This assertion is unpersuasive and meritless. The assertion of precisely what the government will be unable to prove is as much wishful as it is premature.

For the reasons given, this motion is denied.

2. *His motion to require the government to elect between Counts Six and Seven for purposes of trial.*

*Count Six* incorporates the introductory paragraphs and charges that:

> In or about and between May 1990 and December 18, 1997, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant VINCENT GIGANTE, also known as "Chin," knowingly and intentionally engaged in misleading conduct toward other persons, to wit: doctors evaluating his mental competence, with intent to influence the testimony of such doctors in official proceedings, to wit: *United States v. Vincent Gigante,* 90 Cr 446 and 93 Cr 368.

(Title 18, United States Code, § § 1512(b)(1) and 3551 *et seq.*)

*Count Seven* incorporates the introductory paragraphs and charges that:

> In or about and between May 1990 and December 18, 1997, both dates being approximate and inclusive, the defendant, VINCENT GIGANTE, also known as "Chin," together with others, within the Eastern District of New York and elsewhere, knowing, intentionally and corruptly obstructed and impeded and endeavored to obstruct and impede the due administration of justice, to wit: by feigning diminished capacity during the prosecution of *United States v. Vincent Gigante,* 90 Cr 446 and 93 Cr 368.

(Title 18, United States Code, § § 1503, 2 and 3551 *et seq.*)

The premise upon which this motion is based is that "Realistically, ... these two theories of obstruction in fact allege only one offense, since an analysis of the two statutory provisions reveals that they do not each contain operative elements that are not contained in the other.... Accordingly, separating the two theories into distinct counts results in multiplicitous

charges, which are properly the subject of a pretrial motion." Def. Mem. at 10.

The statutes alleged to be violated, provide in relevant part as follows:

18 U.S.C. § 1503

(a) Whoever ... corruptly ... obstructs, or impedes, or endeavors to ... obstruct, or impede the due administration of justice, shall be punished as provided in subsection (b)(b)(3) imprisonment for not more than ten years, a fine ... or both

18 U.S.C. § 1512

(b) Whoever knowingly ... engages in misleading conduct toward another person, with intent to (1) influence, ... the testimony of any person in a judicial proceeding shall be fined or imprisoned not more than ten years or both.

It is important to note that § 1512(j) provides:

If the offense under this section occurs in connection with a trial of a criminal case, the maximum term of imprisonment which may be imposed for the offense shall be the highest of that otherwise provided by law or the maximum term that could have been imposed for any offense charged in such case.

Since an offense charged in the cases referenced in Count Six included a violation of the racketeering statute, 18 U.S.C. § 1962(c), which is punishable by imprisonment for twenty years, it follows that Congress provided a punishment for the violation of § 1512 charged here which is more severe than it provided for the violation of § 1503. This difference alone, would suffice to drive the Court to conclude that Congress did not intend the offense complained of in one count to be the same as that charged in the other.

*Discussion*

"[A]n indictment is multiplitous when it charges a single offense multiple times, in separate counts when, in law and fact, only one crime has been committed."

*United States v. Chacko,* 169 F.3d 140, 145 (2d Cir.1999). Multiplicity is egregious because it violates the Double Jeopardy clause of the Constitution by subjecting a person to punishment for the same crime twice.

The defendant's claim for relief is predicated upon his contention that "the government is taking essentially the same crime, arising out of a single course of conduct and segmenting it into artificial units." His reliance in this regard, upon *United States v. Seda,* 978 F.2d 779 (2d Cir.1992) and cases of that genre, such as *United States v. Holmes,* 44 F.3d 1150 (2d Cir.1995); *United States v. Zvi,* 168 F.3d 49 (2d Cir.1999) cert. denied 528 U.S. 872, 120 S.Ct. 176, 145 L.Ed.2d 148 (1992) and *United States v. Handakas,* 286 F.3d 92 (2d Cir.2002) is misplaced.

■ In the light of the statutory provisions set about above, with particular emphasis of § 1512(j), the conclusion that Counts Six and Seven are not impermissibly duplicitous is required by this exquisitely apposite teaching of *United States v. Chacko,* 169 F.3d 140, 146 (2d Cir.1999):

In assessing whether a defendant is impermissibly charged with essentially the same offense more than once in violation of the Double Jeopardy clause of the Constitution, *the touchstone is whether Congress intended to authorize separate punishments for the offensive conduct under separate statutes.* It is not determinative whether the same conduct underlies the counts; rather, it is critical whether the "offense"—in the legal sense, as defined by Congress—complained of in one count is the same as

that charged in another (emphasis added) (internal citations omitted).

The Court went on to hold in *Chacko* that:

> To assess whether the two offenses charged separately in the indictment are really one offense charged twice, the "same elements" test or the "Blockburger" test is applied ... The *Blockburger* test examines whether each charged offense contains an element not contained in the other charged offense... If there is an element in each offense that is not contained in the other, they are not the same offense for double jeopardy, and they can both be prosecuted.

169 F.3d at 146.

The *Blockburger* test, announced in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1931) is as follows:

> "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." 284 U.S. at 304, 52 S.Ct. 180.

To begin with, even a cursory examination of Counts Six and Seven readily reveals that each does not charge the same act or transaction. Count Six charges conduct aimed at another for the purpose of influencing his testimony whereas Count Seven charges the conduct of the defendant himself. Each contains an element the other does not, viz. The elements of the offense charged in Count Six the government will have to prove beyond a reasonable doubt are that the defendant:

(1) knowingly engaged in misleading conduct toward another person, and

(2) intended to influence the testimony of that person in a judicial proceeding.

The elements of the offense charged in Count Seven the government will have to prove beyond a reasonable doubt are that the defendant:

(1) corruptly obstructed or impeded or endeavored to obstruct or impede

(2) the due administration of justice.

The defendant in *Blockburger* was convicted of three counts charging a sale of morphine to the same buyer. One count charged a sale on a specified day; another count charged a sale on the following day; and the third count charged that the latter sale was not made pursuant to a written order of the person to whom the drugs were sold in violation of a then existing statute. The defendant contended that the two sales made to the same person constituted a single offense and the latter sale not made pursuant to a written order all constituted a single continuing offense. In rejecting this contention the Court distinguished the drug sales in the case from an offense that is continuous in its character by referring to *In re Snow,* 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658 (1887). In that case, the Court held that the offense of cohabiting with more than one woman was a continuous offense which was committed by living together as husband and wife. In the case before it, the Court held, each successive sale constituted a separate offense regardless of how closely they followed each other. Then, the Court quoted from Wharton's Criminal Law (11th Ed.) fn. 3: "The test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately, ... If the latter there can be but one penalty." The "test" described in that venerable treatise is echoed in the recent *Chacko* opinion previously cited—"[I]t is not determinative whether the same conduct under-

lies the Counts, rather it is critical whether the 'offense' ... complained of in one count is the same as that charged in another." That critical determination now made for all of the foregoing reasons is that the offense complained of in Count Six is not the same as the offense complained of in Count Seven and his motions are denied.[2]

## II. *Andrew Gigante*

This defendant has moved this Court for an order

(a) dismissing the indictment or particular counts thereof or striking certain allegations pursuant to Rules 12 and 18, Fed. R. Cr. Pr. and Article III, Section 2 and the Fifth and Sixth Amendments to the United States Constitution;

(b) severing his trial pursuant to Rule 14, Fed. R. Cr. Pr.

(c) directing the government to provide a bill of particulars pursuant to Rule 7(f), Fed. R. Cr. Pr.

His motions are addressed in order.

1. *Dismissing Indictment or Particular Counts Thereof or Striking Certain Allegations.*

The defendant is charged in Count One with violating 18 U.S.C. § 1962(c) (RICO). In Racketeering Act One he is charged with conspiring with others "to obtain property to wit: the right of a labor organization's members to free speech and democratic participation in their union's affairs, as guaranteed by Title 29, United States Code, Section 411, and to loyal and responsible representation by such members' union officers, agents, employees and representatives as guaranteed by ... 29 U.S.C. § 501(a) with the consent of such union members of the International Longshoremen's Association ("ILA") and ILA

locals in the New York metropolitan area, northern New Jersey and Miami, Florida, and their union officers, agents, employees, and other representatives, which consent was to be waived by wrongful use of actual and threatened force, violence and fear, in violation of 18 U.S.C. § 1951." He is also charged with violating 18 U.S.C. § 1951 in Count Three.

18 U.S.C. § 1951, the Hobbs Act, provides in relevant part as follows:

> Whoever ... obstructs, or affects commerce or the movement of any article in commerce by ... extortion or ... conspires so to do, or commits or threatens physical violence to any person or property shall be [punished].

Section 411 of Chapter 11; Subchapter II of 29 U.S.C. is captioned "Bill of Rights of Members of Labor Organizations" and § 411(a)(1) and (2) provide in relevant part as follows:

> (a)(1) Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections ... to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings
> . . . .
>
> (2) Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings ... his views, upon candidates in an election of the labor organization or upon any business properly before the meeting.

This prong of the motion, in the defendant's view "raises at least two important questions concerning the meaning of the Hobbs Act" (Def. Mem. at 3), which are (1)

---

**2.** That § 1503 and § 1512 charge two separate offenses has been clearly announced in

*United States v. Masterpol,* 940 F.2d 760 (2d Cir.1991).

do the rights of union members guaranteed by § 411 constitute "property" within the meaning of the Hobbs Act? and, (2) is it "property" which can be "obtained" within the meaning of the Hobbs Act? He devotes 54 pages of a Memorandum and Reply Memorandum to a vigorous assertion of the view that the answers to those questions are in the negative. The government devotes 21 pages in its Memorandum in Opposition to an equally vigorous assertion that the answers to those questions are in the affirmative. Their respective positions are buttressed by a plethora of cases having varying degrees of relevance to an informed determination of the issues when only a handful would have sufficed to lead this Court inexorably to a conclusion.

In *United States v. Arena*, 180 F.3d 380 (2d Cir.1999) the defendants were convicted of extortion and conspiracy to commit extortion in violation of the Hobbs Act based upon their attacks on medical facilities that provided reproductive health services. The attacks consisted of pouring butyric acid in the premises of the medical facilities causing them to close for substantial periods of time and to incur considerable expense in decontaminating them. Butyric acid is a hazardous liquid that emits a putrid odor. Exposure to its fumes can cause irritation to the eyes and respiratory tract and can cause severe burns to the skin and eyes. The defendant challenged the applicability of that portion of the Hobbs Act that defines "extortion" as meaning obtaining property from another, inducing his consent to it by using or threatening violence or fear. 18 U.S.C. § 1951(b)(2). His contention there, as it is here, is that no "property" was "obtained" within the meaning of the statute. In deciding that his arguments misperceived the scope of the Act, Judge Kearse, writing for the Court, declared as follows:

The concept of "property under the Hobbs Act is an expansive one. While often the property involved is an existing physical asset, the concept is not limited to tangible things, but includes intangible assets such as rights to solicit customers and to conduct lawful business." (internal citations omitted).

180 F.3d at 392.

The Court then addressed the defendant's contention that the property damages sustained by the victims could not have been "obtained" and wrote:

Since the Hobbs Act concept of property is broad, "the Act's requirement that property be 'obtained' is given a similarly broad construction." To commit extortion within the meaning of the Act, the perpetrator of a physical attack or threat need neither seek nor receive an economic benefit. "Lack of economic motive does not constitute a defense to Hobbs Act crimes."

\* \* \* \* \* \*

A perpetrator plainly may "obtain" property without receiving anything, for obtaining includes "attaining ... disposal of," and "disposal" includes the regulation of the fate ... of something." Thus, even when an extortionist has not taken possession of the property that the victim has relinquished, she has nonetheless "obtained" that property if she has used violence to force her victim to abandon it.

\* \* \* \* \* \*

In sum, where the property in question is the victim's right to conduct a business free from threats of violence and physical harm a person who has committed or threatened violence or physical harm in order to induce abandonment of that right has obtained or attempted to obtain property within the meaning of

the Hobbs Act. (internal citations omitted).

180 F.3d at 394.

This defendant's characterization of the Court's view of the word "obtain" as being derived "from two creatively interpreted dictionary entries" (Def. Mem. at 29) notwithstanding, substituting "the victim's right to democratic participation in their union's affairs: for "the victim's right to conduct a business" in the last quoted paragraph provides the answer to the questions posed by the defendant.

In *United States v. Bellomo*, 176 F.3d 580 (2d Cir.1999), the defendants were convicted of conspiracy to control a union election by violence in violation of the Hobbs Act in that the defendants "sought to replace control of the union by the Luchese Family with control by the Genovese Family—a control that necessarily rested not on democratic election but on at least the threat of violence in violation of 18 U.S.C. § 1951." In affirming their conviction the Court held that "The right of the members of a union to democratic participation in a union election is property; that the right is intangible does not divest it of protection under the Hobbs Act. *United States v. Local 560 of the International Brotherhood of Teamsters,* 780 F.2d 267, 281 (3d Cir.1986) 176 F.3d at 592–93."

In *United States v. Tropiano*, 418 F.2d 1069 (2d Cir.1969) the defendants challenged their conviction for violating the Hobbs Act contending inducing the victims of their extortion to surrender their right to do business within a designated geographic area was too amorphous to "be squared with the Congressional expression in the Act of 'obtaining property.'" In rejecting their challenge, the Court wrote: "The concept of property under the Hobbs Act, as devolved from its legislative history and numerous decisions, is not limited to physical or tangible property or things, but includes, in a broad sense, any valuable right considered as a source or element of wealth and does not depend upon a direct benefit being conferred upon the person who obtains the property .... The right to pursue a lawful business including the solicitation of customers necessary to the conduct of such business has long been recognized as property within the protection of the Fifth and Fourteenth Amendments of the Constitution." (internal citations omitted) 418 F.2d at 1075–76.

Of particular interest is *Dusing v. Nuzzo*, 177 Misc. 35, 29 N.Y.S.2d 882 (S.Ct. Ulster Co.1941), modified on other grounds and affirmed, 263 A.D. 59, 31 N.Y.S.2d 849 (1941), decided by Justice Francis Bergan who subsequently became a distinguished member of the New York Court of Appeals. The plaintiffs were members of the defendant Local 17 of the International Hod Carriers, Building and Common Laborers' Union who sought a mandatory injunction requiring that an election be held and for an accounting of the union funds. The initial question of law presented was whether the dispute was justiciable given that internal disputes in labor unions do not require judicial intervention. The answer to that question, wrote the court, required the concurrence of three elements, only one of which is relevant for our purposes, namely, that a property right or its equivalent be involved.

The defendant argued that a court of equity intervenes only to protect property rights and since the election of officers are not property rights of its members, judicial intervention was not appropriate. In an eloquent response to that argument persuasively apposite here, the Court wrote:

> But a labor union is not a social club. It is an economic instrumentality conceived in the necessities of making a living

under the expansive influence of modern industrial concepts. The individual workman is impotent to deal with a great industrial organization. Aggregates of capital can only be met on equal terms by labor in the aggregate of union organization. The success of the result is dependent upon the responsiveness and the ability of the leader of the union. He is not the arbiter of social pleasure; he is the dispenser of bread and it is not difficult to hold that the union member has an enforceable interest in union elections of which the Court in equity will be cognizant. *It is as real and needful of equitable protection, surely as money or chattels.*

The right to membership in a union is empty if the corresponding right to an election ... is denied. If a member has a "property right" in his position on the roster, I think he has an equally enforceable right in the election of men who will represent him in dealing with his economic security .... Where an election is required by the law of a union, *the right to participate is denied a substantial right which is neither nebulous nor ephemeral.* (emphasis added).

177 Misc. at 37, 29 N.Y.S.2d at 884.

Although *Nuzzo* was not written in the context of a Hobbs Act prosecution, it was cited favorably in *United States v. Local 560 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 780 F.2d 267 (3d Cir.1985), a civil RICO action brought against defendants who, the government alleged, acquired an interest in and effectively controlled the union through extortion and other acts of racketeering. The defendants argued that the membership's Labor Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C.A. § 401 *et seq.* rights are intangible property rights and cannot be the basis of a claim of extortion under the Hobbs Act. After citing *Nuzzo* at length, the Court made this observation, significant in light of the reliance and the emphasis placed by the defendant upon the New York genesis of the Hobbs Act.

This holding [in *Nuzzo* ] is significant because the Hobbs Act's definition of extortion was closely modeled on that in the New York Statute and Congress intended that extortion as used in the Hobbs Act reflect the common understanding of the states. *See United States v. Enmons,* 410 U.S. 396, 406 n. 16, 93 S.Ct. 1007, 1013 n. 16, 35 L.Ed.2d 379 (1973). Thus, we conclude that the membership's intangible property right to democratic participation in the affairs of their union is property considered extortable "property" for purposes of the Hobbs Act.

780 F.2d at 281–82.

The defendant's Memorandum in Support of his motion begins with an acknowledgment of *National Organization for Women, Inc. v. Scheidler,* 267 F.3d 687 (7th Cir.2001) cert. granted, 535 U.S. 1016, 122 S.Ct. 1604, 152 L.Ed.2d 619 (2002). The plaintiffs commenced that civil RICO action against anti-abortion activists alleging as predicate acts numerous violations of the Hobbs Act. The defendants' primary opposition is that the women's rights to seek medical services from the clinics and the clinics' rights to provide those services and the doctors' rights to perform them are not "property" for Hobbs Act purposes and if considered "property" the defendants didn't "obtain" it. The court rejected those arguments almost summarily. 267 F.3d at 709.

The defendant viewed the granting of certiorari in *Scheidler* as indicating that the Supreme Court "is intent on deciding the Hobbs Act issues presented by *Scheidler* which are the same as the issues

raised" by him and suggested that this court await the decision in that case before determining his motion. Def. Mem. 3—5 ns. 2 and 3. I was wrong in dismissing the then premature faint glimmer of optimism I detected in the prospective Supreme Court's decision in Scheidler and his subtle suggestion that his optimistic view be reflected in this decision. In the light of *Arena, Bellomo, Tropiano* and the other cases to which I referred, I conceived it to be my duty to be bound by those authorities of the Court of Appeals for this circuit.

Ignoring the wise observation of Sir Francis Bacon that "an over-speaking judge is no well-tuned cymbal," I ventured to add these additional comments. The meaning of the word "property" so frequently discussed in Hobbs Act cases, is perhaps read too narrowly as being synonymous with what I will call, for want of a better word "thingness." That is to say, the word conjures up an image of something tangible—a plot of land—a chattel, a "thing," although, to be sure, as the cases previously discussed recognized, the word is also understood to embrace intangibles. Intangibles are essentially rights which may or may not be represented by something tangible that itself has no intrinsic value apart from the rights it represents, such as, for example, a bond. A cause of action is an intangible that can neither be seen, heard, touched, smelled nor tasted and yet that it is "property" would not be disputed.

■ To understand that "property" is the bundle of rights to a thing rather than the thing itself is to place "property" in its proper context for the purpose of the Hobbs Act or otherwise. The Court in the

hoary case of *Wynehamer v. The People*, 13 N.Y. 378 (1856) put it succinctly at page 433, thus: "Property is the right of any person to possess, use, enjoy and dispose of a thing. The term, although frequently applied to the thing itself, in strictness means only the rights of the owner in relation to it." [3]

■ "Property," that is to say, rights, are granted by the government when the furtherance of an important government interest requires it. Licenses of many kinds, to practice medicine, to practice law, to engage in the business as a plumber or an electrician, for example, are "property." In *National Organization for Women v. Scheidler*, 267 F.3d 687, 702 (7th Cir.2001) the Court recognized that the "protections of the plaintiffs' rights to seek and provide medical care free from violence, intimidation, and harassment is... an important government interest" and thus "property" within the meaning of the Hobbs Act. That the protection of the rights of union members to free speech and to democratic participation in the affairs of the union is an important government interest is clearly conveyed by 29 U.S.C. § § 401, 411, 530. Section 401 provides, in relevant part that "The Congress finds, that in the public interest, it continued to be the responsibility of the Federal Government to protect employees' rights to organize, to choose their own representatives, ...and otherwise engage in concerted activities for their mutual aid or protection." Section 411 gives every union member the right to vote in elections, to attend membership meetings, to participate in the deliberations and voting upon the business of such meetings and to enjoy the rights of free

---

**3.** It is, perhaps, superfluous to note that "property" which is not disposable, i.e., transferrable or assignable, is nonetheless "property." A license to practice law, or medicine, or plumbing is not assignable, but undeniably property. So, too, land, over which the owner's power of alienation is suspended (within the parameters of the Rule against Perpetuities) is undeniably "property."

speech and assembly. That those rights further an important government interest is emphasized by § 530 which makes it a crime to interfere with the exercise of those rights by the use of force, violence or the threatened use of force or violence. It would necessarily follow that this "right" of a union member to democratic participation in the affairs of the union, to freedom of speech and assembly assured to him by the LMRDA is a property right taken or "obtained" from him by violence or the threat thereof at the risk of violating the Hobbs Act.

On February 26, 2003, before this opinion was completed, the Supreme Court decided *Scheidler*, 537 U.S. 393, 123 S.Ct. 1057, 154 L.Ed.2d 991, by reversing the decision of the 7th Circuit. The defendant's optimism was not misplaced. The Court did not dispute the broad definition of "property" as including intangibles, it faulted the application of the Hobbs Act which paid insufficient attention to the plain meaning of "extortion" which is defined in 18 U.S.C. § 1951(b)(2) to "mean the *obtaining* of property from another ...." (emphasis mine). The Court wrote:

> There is no dispute in these cases that petitioners interfered with, disrupted, and in some instances completely deprived respondents of their ability to exercise their property rights. Likewise, petitioners' counsel readily acknowledged at oral argument that aspects of his clients' conduct were criminal. But even when their acts of interference and disruption achieved their ultimate goal of 'shutting down' a clinic that performed abortions, such acts did not constitute extortion because petitioners did not 'obtain' respondents' property. Petitioners may have deprived or sought to deprive respondents of their alleged property right of exclusive control of their business assets, but they did not

acquire any such property. Petitioners neither pursued nor received 'something of value from' respondents that they could exercise, transfer or sell. *United States v. Nardello*, 393 U.S. 286, 290, 89 S.Ct. 534, 21 L.Ed.2d 487 (1969). To conclude that such actions constituted extortion would effectively discard the statutory requirement that property must be obtained from another, replacing it instead with the notion that merely interfering with or depriving someone of property is sufficient to constitute extortion.

And again on 123 S.Ct. at 1065–66, the Court held: "Because we find that petitioners did not obtain or attempt to obtain property from respondents, we conclude that there was no basis upon which to find that they committed extortion under the Hobbs Act."

In its FN 6 the Court observed that "the dissent was mistaken to suggest that our decision reaches, much less rejects, lower court decisions such as *United States v. Tropiano*, 418 F.2d 1069, 1076 (1969) in which the Second Circuit concluded that the intangible right to solicit refuse collection accounts 'constituted property within the Hobbs Act definition.'" Predictably, this footnote will provide grist for searching minds. Nothing in the body of the Court's opinion could be read to suggest that "the right to solicit refuse collection accounts" was not property. The point of Justice Stevens' dissent is that that right can be extorted, that is, obtained. Did the Court intend to convey its agreement with Justice Stevens that it can be obtained?

In FN8, the Court implicitly, if not explicitly, disavowed *United States v. Arena*, 180 F.3d 380 (2d Cir.1999) as reading "a more expansive definition of 'obtain' than is found in the cases ...." In a letter to

the Court dated March 7th, 2003, the government concedes that *Arena* is no longer good law.

A conference was called by the Court to consider the fate, if any, of Racketeering Act One(b) and Count Three(b) in the light of the Supreme Court's opinion in *Scheidler*. Those portions of the indictment charge the defendants with violating the Hobbs Act by obtaining "property, to wit: the right of a labor organization's members to free speech and democratic participation in their union's affairs ... and to loyal and responsible representation of such members' union officer, agents, employees and representatives' with their consent that was induced by wrongful use of actual and threatened force, violence and fear." The defendants' argued that *Scheidler* requires the dismissal of those charges. The government, conceding that the "right to free speech" portion should be stricken, argued that the remainder of the charges need not be. The defendants do not dispute that part (a) of RA One and Count Three properly allege a violation of the Hobbs Act. Each accepted the Court's invitation to submit a written explanation of their view in letters dated March 7th, 2003.

The defendants argue persuasively, among other things, that 29 U.S.C. § 530 specifically provides that the conduct alleged in part (b) of RA One and Count Three is a crime, a misdemeanor, punishable by a fine of not more than $1000 or imprisonment for one year or both. That statute is, then, not a felony nor is it listed as a racketeering act, a RICO predicate, in 18 U.S.C. § 1961. It therefore follows, they contend, that had Congress intended the conduct proscribed by § 530 to constitute a RICO predicate, it would have made its violation a felony and listed it in § 1961 or would have enlarged the Hobbs Act to include the prohibition of § 530. If, they

argue, the allegations of part (b) were punishable under the Hobbs Act, § 530 would be superfluous.

The government argues that *Scheidler* "left undisturbed" the numerous cases in the Circuit which recognized as "property" the right to democratic participation in union elections. The cases then cited by the government, were, in fact, not even mentioned by *Scheidler*, viz.: *United States v. Bellomo*, 176 F.3d 580, 592–93 (2d Cir.1999); *United States v. Local 1804–1, Intl. Longshoremen's Assn.*, 812 F.Supp. 1303, 1335 (S.D.N.Y.1993); *United States v. District Council of N.Y.C. and Vicinity of the United Brotherhood of Carpenters and Joiners of America*, 778 F.Supp. 738, 756 (S.D.N.Y.1991); *United States v. Intl. Bhd. of Teamsters*, 708 F.Supp. 1388, 1399 (S.D.N.Y.1989).

The issue, however, is not whether that right of a union member is property, the question that *Scheidler* asks, is it property that is obtainable? The government argues that it is. Referring to *Tropiano* and the union cases, the government writes: "An organized crime figure who extorts a garbage hauler obtains the intangible business opportunities of the victim in exactly the same way that an organized crime figure who extorts union members obtains the intangible property of his victim. In both cases, nothing physical passes from the victim to the defendant, but the victim's intangible right—whether to solicit business or select union officers—is transferred to the extortioner, who then exercises, transfers or sells it for his own enrichment .... A union member's ability to nominate and elect his officers is something that organized crime figures can obtain and then exercise, transfer or sell." Gov. letter of 3/7/03 at p. 4. Although vigorously and persuasively presented, the Court is constrained to ask how can that union member's right be exercised, trans-

ferred or sold? To the defendants' reference to 29 U.S.C. § § 402(k), 481(b) which prohibits voting by proxy, the government responds that one may be guilty of extortion if, by extortionist means, he obtains illegal narcotics from a drug dealer. The fact that transfer of the drugs from the victim is an illegal distribution would not be a defense to a charge under the Hobbs Act. The analogy, although appealing, is not persuasive. The victim's grievance in that hypothetical would surely not be the loss of his right to distribute drugs, but what the extortionist has obtained from him, the drugs.

■ By their respective submissions, the parties are, in essence, requesting this Court to "divine, as best it can, what would be the event of [an] appeal" from its determination. *See Spector Motor Service v. Walsh*, 139 F.2d 809, 823 (2d Cir.1944) in which Judge Learned Hand, in a dissent, conceived it to be the measure of the lower court's duty to divine that event as best it can. Discharging that duty as best I can, I direct that part (b) of RA One and Count Three be stricken in the belief that *Scheidler* requires it. Part (a) of RA One and Count Three are not disturbed and remain intact.

Because reasonable minds might conclude that the issue is not entirely free from doubt, the government is encouraged to exercise its right to appeal this determination as it may, in accordance with 18 U.S.C. § 3731.

2. *Motion to Dismiss Count One Because it Fails to Plead a Racketeering "Pattern" as to Him.*

The questions addressed to this motion posed by the defendant, the answers to which, he believes, will require the Court to grant it, are: (a) Does a Hobbs Act conspiracy constitute "racketeering activity" within the meaning of § 1961(1)(B), when § 371 is omitted from it?; and, (b) Are a conspiracy and the object of the conspiracy charged as a substantive offense sufficiently separate offenses to constitute a valid "pattern" within the meaning of § 1961(5).

His assumption is that given the omission of 18 U.S.C. § 371, the general conspiracy statute, from the rest of "racketeering activity" in § 1961(1), the Hobbs Act conspiracy with which he is charged in the first Racketeering Act of Count One should be regarded as similarly excluded. He also contends that if a conspiracy and the substantive offense which is the object of the conspiracy could constitute a "RICO pattern," that element would lose all meaning and would be unconstitutionally vague.

*Discussion*

§ 1961(1)(B) defines "racketeering activity" to mean "any act which is indictable under any of the following provisions of Title 18, United States Code:" § 1951 is included among the many provisions listed and conspiracy to violate § 1951 expressly prohibited by that section is, therefore, an act which is indictable and a "racketeering activity." Other provisions of Title 18 make conspiracy to violate them indictable and would fall within the definition of "Racketeering activity." *See, for example,* §§ 892 and 894.

The rule that a substantive crime and a conspiracy to commit that crime are separate offenses is not debatable. *United States v. Felix*, 503 U.S. 378, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992). Although that rule is most frequently invoked to dismiss challenges to an indictment charging both on double jeopardy grounds, the rule has also been applied to challenges such as the one mounted here. *United States v. Licavoli*, 725 F.2d 1040 (6th Cir. 1984) and cited with approval in *United States v. Friedman*, 854 F.2d 535 (2d Cir.

1988). *See also Iannelli v. United States,* 420 U.S. 770, 777, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975). A careful examination of Racketeering Acts One and Two quickly reveals that the extortion charged in each is significantly different and sufficiently distinct to constitute a pattern. Racketeering Act One charges the defendants with extorting the rights of union members to speak freely and participate democratically in the affairs of their union. Racketeering Act Two charges them with extorting money from their victim, an owner of a business operating at piers in New York, New Jersey and Florida.

■■■ The defendant acknowledges the cases which have held that Hobbs Act extortion conspiracy is a viable RICO predicate, *see, e.g., United States v. Private Sanitation Industry of Nassau/Suffolk, Inc.,* 793 F.Supp. 1114, 1133 (E.D.N.Y.1992) and *United States v. The Bonanno Organized Crime Family,* 695 F.Supp. 1426, 1429 (E.D.N.Y.1988) but discounts them as not having addressed whether the conspiracy is an "act" within the meaning of 1961(1)(B). The essence of a conspiracy is an *agreement* between or among two or more persons to commit a crime. To suggest that an agreement, be it express or implied, may be formed devoid of some act is hardly persuasive. Having concluded that Count One does allege a pattern of racketeering activity, I am then guided by the teaching of Justice Holmes that "A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score." *United States v. Jin Fuey Moy,* 241 U.S. 394, 401, 36 S.Ct. 658, 60 L.Ed. 1061 (1916) (citing *United States ex rel. Attorney Gen-*

*eral v. Delaware & Hudson Co.,* 213 U.S. 366, 408, 29 S.Ct. 527, 53 L.Ed. 836 (1909)). "This canon is followed out of respect for Congress, which we assume legislates in the light of constitutional limitations." *Rust v. Sullivan,* 500 U.S. 173, 191, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991). Accordingly, this prong of Andrew Gigante's motion is denied.

3. *Motion to Sever the Trial of Andrew Gigante from the Trial of His Father.*

This motion is bottomed upon the defendant's assertion that "he cannot be tried together with his father, ... without being unfairly tarred by the government's allegations concerning his father and Andrew's unavoidable association with his father." [4] (Def. Mem. at 58). He also asserts that his motion should be granted because: (1) he "might well be inclined to call Salvatore Gravano as a defense witness because he previously exculpated [him] when testifying against [his father] at an earlier trial," but can't call him "without severely prejudicing his father" against whom [he] gave highly incriminating testimony; and (2) his role in this case was "as the government has made clear," only as a messenger for his father.

An indictment which names as defendants a father and a son is not unique. *See, e.g., United States v. Saldivar* 710 F.2d 699 (11th Cir.1983); *United States v. England,* 347 F.2d 425 (7th Cir.1965); *United States v. Duran,* 687 F.2d 348 (11th Cir.1982); *United States v. Bright,* 630 F.2d 804 (5th Cir.1980); *United States v. Kye,* 411 F.2d 120 (8th Cir.1969); *United States v. Edgmon,* 952 F.2d 1206 (10th Cir.1991) cert. denied, 505 U.S. 1223, 112 S.Ct. 3037, 120 L.Ed.2d 906 (1992); *United*

---

**4.** Implicit in this assertion perhaps, is that his teeth should not be set on edge because his father has allegedly eaten sour grapes. *See* Jeremiah 31:29. ("The fathers have eaten sour grapes, and the children's teeth are set on edge.") If this defendant's teeth are set on edge, it may be because he is named in four counts of the indictment.

*States v. Aparo,* 01 Cr 416 (E.D.N.Y.2001). Research has revealed no case in which a severance was granted by virtue of that relationship.

■ An "inclination" to call Salvatore Gravano as a witness is hardly a basis for granting a severance, putting aside the unlikelihood that the defendant would succumb to such an inclination. The government, in its opposition to the motion, Gov. Mem. at 97, observes that Gravano's cooperation with the government began in approximately 1991 and the crimes with which this defendant is charged were allegedly committed between 1994 and 2001.

The defendant's characterization of his role as "nothing more than a messenger for his father" Def. Mem. at 59, is not warranted from a reading of the indictment in which he is charged with Racketeering (Count One); Racketeering Conspiracy (Count Two); Extortion Conspiracy (Count Three) and Extortion (Count Four). His father is named in the same Counts in addition to two counts of obstructing justice. The joinder of this defendant with his father is explicitly authorized by Fed. R. Cr. P., Rule 8(b) which provides, in substance, that two or more defendants may be Indicted together if they are alleged to have participated in the same crimes or series of crimes. As has been indicated, Andrew and Vincent Gigante are charged together in four Counts of this indictment and Rule 8(b) does not exclude defendants who are related to each other.

Since 1993, determinations of severance motions have been informed by *Zafiro v. United States,* 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). That case is, by now, so thoroughly familiar to all who labor in the thorny thicket of the criminal law, that to recite its teaching at length would be superfluous. Suffice it to say, that joint trials are favored in the federal courts and should be held unless "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." 506 U.S. at 538–39, 113 S.Ct. 933. Aside from his relationship to his father, this defendant has advanced no reason of substance that would lead this Court to conclude that jurors would be unable to follow the Court's instructions to consider and evaluate the evidence as against each defendant separately and render a fair and impartial verdict against each defendant separately based solely upon such an evaluation of the evidence.

Pending before the Court is the government's motion for an anonymous and partially sequestered jury. Anticipating the possibility that the motion will be granted, Andrew Gigante advances that possibility as an additional basis for severing his trial. Def. Mem. of 2/13/03. Also advanced as a basis for granting the relief he seeks, is an excerpt of the testimony of George Barone elicited in the trial of *United States v. Peter Gotti, et al.,* 02 Cr 606(FB) currently proceeding in this courthouse, and which is reproduced in Def. Mem. at 6–10. That excerpt purports to reveal that Barone was extorting Andrew Gigante and Burt Guido and is thus fatal to RA Two and Count Four, which he views as charging Andrew Gigante with extorting Barone. If his view is correct, then his Rule 29 motion made at the conclusion of the government's case would have to be granted, he contends, and so would his motion for a severance.

That his view of the Barone testimony and its implication are not correct is advanced in the government's Reply Memorandum in Support of its Motion for an Anonymous Jury and in Opposition to Andrew Gigante's last submission in support

of his Motion for a Severance. Gov. Reply Mem. The John Doe 1 referred to in RA Two and Count Four as the victim of the extortion was not Barone, but Bert Guido as the government seeks to make plain. Gov. Reply Mem. 2–6; 15–17.

The sharply conflicting view of the significance of Barone's testimony based upon the conclusion reached by the defendant derived from his interpretation of the excerpt he reproduces in his Memorandum and the government's interpretation of that excerpt placed as it is by the government, in its larger and historical context casts significant doubt about the defendant's confidently expressed assertion that his Rule 29 motion would have to be granted. That determination would, of necessity therefore, have to await the trial and, for the reason stated, requires no reconsideration of the denial of his motion for a severance.

The government's motion for an anonymous and partially sequestered jury and Andrew Gigante's motion for a severance in consideration of that motion will be addressed by the Court in a separate decision.

### 4. *Motion Addressed to Venue*

Andrew Gigante moves this Court for an order that would dismiss Counts Three and Four based upon his claim that the government has failed to properly plead and *cannot establish* venue in this district.

Count Three, after incorporating the introductory paragraphs previously alluded to alleges that ... "within the Eastern District of New York and elsewhere," the named defendants conspired to violate the Hobbs Act (18 U.S.C. § 1951(a)) by obtaining money from "businesses operating at the piers of the New York area, northern New Jersey and Miami, Florida ...." and by obtaining the right of union members of the ILA and ILA locals in the New York metropolitan area, northern New Jersey and Miami, Florida to the democratic participation in union affairs.

Count Four, after incorporating the introductory paragraphs, alleges that "within the Eastern District of New York and elsewhere," the defendants violated the Hobbs Act by extorting "money from John Doe 1, the owner of a business operating at the piers in the New York metropolitan area, northern New Jersey and Miami, Florida ...."

The historical background leading to the adoption of Article III, § 2, cl. 3 of the Constitution and the enactment of Rule 18 of the Fed. R. Cr. P. which mirrors the Constitution, having been related clearly and succinctly in *United States v. Saavedra*, 223 F.3d 85 (2d Cir.2000) and in countless other cases, see, e.g., *United States v. Perez*, 280 F.3d 318, 327–29 (3rd Cir.2002) will not be repeated here. Familiarity with that background and its evolution will, instead, be presumed.

 Having given considerable attention to this motion and to the teachings of *United States v. Rodriguez–Moreno*, 526 U.S. 275, 119 S.Ct. 1239, 143 L.Ed.2d 388 (1999); *United States v. Cabrales*, 524 U.S. 1, 118 S.Ct. 1772, 141 L.Ed.2d 1 (1998); *United States v. Saavedra*, 223 F.3d 85 (2d Cir.2000); *United States v. Brennan*, 183 F.3d 139 (2d Cir.1999), I have concluded that the indictment, alleging on its face that the offenses occurred "within the Eastern District of New York and elsewhere," suffices to sustain it against this pretrial attack on venue. *See, e.g., United States v. Forrester*, 2002 WL 1610940 (S.D.N.Y.2002); *United States v. Szur*, 1998 WL 132942 (S.D.N.Y.1998). On a motion to dismiss the indictment, the allegations contained therein must be taken as true. *United States v. Goldberg*, 756 F.2d 949 (2d Cir.1985). The defendant

may renew his motion to dismiss on venue grounds after the government's case in chief has been presented and again, if need be, at the end of the entire case. It is then that an informed determination can be made whether the government has proved venue by a preponderance of the evidence and whether the defendant's claim that it cannot do so is wrong. This motion is, accordingly, denied.

### 5. *Motion for Bill of Particulars*

■ This defendant seeks an order directing the government to provide a bill of particulars regarding RAs One and Two and Counts Three and Four, and one pertaining to venue. Motions for bills of particular are ubiquitous in criminal cases as is the Court's review of the law pertaining to them. This Court has had frequent occasion to indulge in such review. For example, in *United States v. Crozzoli*, 698 F.Supp. 430, 435–36 (E.D.N.Y.1988), I wrote that Rule 7(f), Fed. R. Cr. P. permits a defendant to seek a bill of particulars to identify with specificity the nature of the charge pending against him so that he may prepare for trial, avoid surprise and be able to claim double jeopardy should he be prosecuted again for the same crime. If the information the defendant seeks is to be found in the indictment or in some acceptable alternative form, no bill or particulars is required.

■ A bill of particulars is not designed to: obtain the government's evidence; restrict the government's evidence prior to trial; assist the defendant's investigation; obtain the precise way in which the government intends to prove its case; interpret its evidence for the defendant, or disclose its legal theory. Those disfavored uses to which a bill of particulars is sought to be put is discussed in the case law that is legion and the citations to which would serve no informative purpose beyond un-

duly lengthening this already lengthy opinion. A reading of this indictment coupled with the voluminous discovery the government has represented it has provided to the defendant, Def. Mem. at 109–112, compels the conclusion that the defendant is sufficiently informed of the offenses with which he is charged to enable him to prepare for trial and to be assured that should he be prosecuted again for the same crimes he can confidently raise the bar of double jeopardy. This motion is also, accordingly, denied.

### III. *Pasquale Falcetti*

This defendant has moved this Court for an Order that would: (a) dismiss Counts One and Two; (b) dismiss Counts Three, Four, Five, Twelve, Thirteen and Fourteen on venue grounds; (c) dismiss those portions of RAs Three and Four which allege a scheme to defraud the right to honest service; (d) dismiss Count Twelve and RA 10(A) for failure to specify the unlawful activity; (e) strike that portion of Count Thirteen and RA 10(B) which charges "bribery in violation of the laws of New York State;" (f) grant a severance and separate trial for Vincent Gigante; (g) combine RAs One and Two into one RA; (h) dismiss RAs 6(A) and (B) because they are not related to the enterprise; (i) grant a bill of particulars as requested; (j) direct the government to supply notice of 404(b) evidence; (k) direct early production of Brady, Giglio and Jenkins Act materials; (*l*) such other and further relieve as may be requested.

Falcetti was named in the following Counts: Racketeering (Count One) and RAs 1 3, 9, 10(A) and (B), 11; Racketeering Conspiracy (Count Two); Extortion Conspiracy (Count Three); Extortion (Count Four); Money Laundering (Count Five); Labor Bribery Conspiracy (Count Eleven); Money Laundering Conspiracy

(Count Twelve); Travel in Aid of Racketeering (Count Thirteen); Gambling (Count Fourteen).

### Discussion

(a) His motion to dismiss Counts One and Two is predicated upon Justice Scalia's expression of "misgivings" about the constitutionality of the RICO requirement of a "pattern of racketeering activity." This motion lacks merit and is denied. The constitutional misgivings was considered and rejected by the Court in *United States v. Coiro*, 922 F.2d 1008, 1017 (2d Cir.1991). I will, in addition, obey the instruction of Justice Holmes and construing the statute fairly, avoid the conclusion that it is unconstitutional. *United States v. Jin Fuey Moy*, 241 U.S. 394, 36 S.Ct. 658, 60 L.Ed. 1061 (1916).

(b) Dismissing the referenced Counts on Venue Grounds.

Counts Three and Four were the subjects of the same motion on behalf of Andrew Gigante and the Court's disposition of that motion is applicable and incorporated here. See pages 579–580, *supra*.

Counts Five and Twelve, after incorporating the 16 introductory paragraphs, charges the defendant and others with money laundering conspiracies committed within the Eastern District of New York and elsewhere.

Count Thirteen, after incorporating the 16 introductory paragraphs, charges the defendant within the Eastern District of New York and elsewhere, with interstate travel in aid of racketeering.

Count Fourteen, after incorporating the 16 introductory paragraphs, charges the defendant within the Eastern District of New York and elsewhere, with operating an illegal gambling business.

The Court has addressed this issue in denying a similar motion by Andrew Gigante, basing its denial on the precedent for resisting it where an indictment alleges on its face that the offense occurred in the Eastern District of New York and elsewhere. *See, United States v. Szur*, 1998 WL 132942, at *9 (S.D.N.Y.1998); *United States v. Forrester*, 2002 WL 1610940, at *1 (S.D.N.Y.2002); *United States v. Long*, 697 F.Supp. 651, 655 (S.D.N.Y.1988).

(c) *Dismissing Counts Three and Four*

This motion replicates the motion made by Andrew Gigante and is denied for the reasons discussed there.

(d) *Dismissing Count Twelve and RA 10(A)*

The reason advanced for this motion is that "The specified unlawful activity must be a violation of a specific statute listed in 18 U.S.C. § 1961(1)." No authority is cited for that startling assertion which is meritless. Those allegations track 18 U.S.C. § 1956(a)(1). He also moves to dismiss Count Thirteen and RA 10(B) contending that while charging "bribery in violation of the laws of the State of New York ... without specifying the crime." Those allegations track 18 U.S.C. § 1952(a)(3)(A) and § 1952(b) defines "unlawful activity" as including "bribery ..." in violation of the laws of the State in which committed: and violations of 18 U.S.C. § 1956, the money laundering statute. This motion is similarly meritless and denied.

(f) *Granting a Severance for Vincent Gigante*

Questions regarding this defendant's standing to make this motion on behalf of Vincent Gigante aside, that defendant made the motion on his own behalf and it was denied as is this one.

(g) *RA One and RA Two Should be Combined into One*

This motion was made by Andrew Gigante on whose arguments this defendant relies. It was denied then and is denied now.

(h) *Dismissing RA 6(A) and (B)*

In making this motion, he relies upon the same motion made by Vincent Gigante. It was denied then and is denied now.

(i) *Bill of Particulars*

The defendant joins in the motions made by Cafaro, Bellomo and Ragusa and for the reasons given in the determination of those motions, this motion is denied.

(j) *Notice of 404(b) Evidence*

The government has been directed to provide such notice and the Court will assume that its direction was complied with.

(k) *Brady, Giglio and Jencks*

The Court has no authority to direct the government to provide the material sooner than the statute, 18 U.S.C. § 3500, requires it to.

The government is directed to provide the materials in accordance with *Brady, Giglio, Argurs* and *Bagley* no later than three weeks prior to trial. Upon application by the government for good cause shown, this schedule may be amended.

IV. *Ernest Muscarella*

This defendant moves this Court for an order:

1. Pursuant to the Fifth and Sixth Amendments of the United States Constitution, Rules 6, 7 and 12 of the Fed. R. Cr. P., *Griffin v. United States,* 502 U.S. 46, 59, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991) and its progeny and the inherent supervisory powers of this Court, dismissing Counts One, Two and Ten upon the grounds that those Counts and RAs are legally defective and the impossibility of determining upon what bases the grand jury relied in voting to return a true bill.

2. Dismissing RAs 10(B), 11 and Count Fourteen on the grounds that they fail to state a crime in that they fail to identify the specific statute the defendant allegedly violated.

3. Dismissing Count One upon the ground that it charges more than one crime in a single count and is, therefore, duplicitous.

4. Dismissing Counts One and Two because the grand jury was misled into believing that the alleged conduct of other defendants could be considered in determining whether probable cause existed to charge him with Counts One and Two.

5. Dismissing Count Two as being based upon a defective legal theory of RICO conspiracy.

6. Dismissing Counts One and Two on the grounds that the RICO statute is unconstitutionally applied and that the pattern or racketeering activity are not horizontally related.

7. Dismissing RAs One and Eleven and Counts Two, Three and Fourteen on the grounds that they are constitutionally insufficient and fail to state a crime.

8. For an Order directing the government to identify in advance of trial conversations it intends to offer in its case in chief which may implicate *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

9. For an Order requiring the government to provide a Bill of Particulars relevant to him.

10. For an Order pertaining to forfeiture issues should he be convicted which will be addressed at a future time should that be warranted.

## Discussion

A. The defendant's motion numbered "1" above, asserting that Counts One, Two and Ten and the RAs are legally defective and should be dismissed for the additional reason that it is impossible to determine the basis upon which the grand jury relied in returning an indictment. This motion is denied. The Counts and RAs that are the targets of this motion contain "a plain, concise and definite written statement of the essential facts constituting the offense charged" Rule 7(c) Fed. R. Cr. P. and are not legally defective. As regards the second object of this motion, it ignores the well settled teaching of *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956) that "An indictment returned by a legally constituted and unbiased grand jury, ... if valid on its face, is enough to call for trial of the charge on the merits." To hold indictments open to challenge for the reason advanced by the defendant would enhance "the abuses of criminal practice." *Id.* This motion is denied.

B. The defendant's motion numbered "2" above is denied. Advisory Committee Note 3 to Subdivision (c) of Rule 7, Fed. R. Cr. P. states that "The law at present regards citations to statutes ... as not part of the indictment" citing *Williams v. United States,* 168 U.S. 382, 18 S.Ct. 92, 42 L.Ed. 509 (1891) and *United States v. Hutcheson,* 312 U.S. 219, 61 S.Ct. 463, 85 L.Ed. 788 (1941). That sentence in Rule 7(c)(1) which requires an indictment to "state for each count the official ... citation of the statute, ... which the defendant is alleged to have violated" is, as stated in the Adviser's Notes "for the ben-

efit of the defendant and is not intended to cause a dismissal of the indictment, but simply to provide a means by which he can be property informed without danger to the prosecution."

C. The defendant's motion numbered "3" above, is denied. The premise upon which this motion is made has been rejected in *United States v. Hickey,* 16 F.Supp.2d 223, 227–29 (E.D.N.Y.1998) and in *United States v. Indelicato,* 865 F.2d 1370 (2d Cir.1989) and *United States v. DiNome,* 954 F.2d 839 (2d Cir.1992).

D. The defendant's motion numbered "4" above is denied as meritless. The assumption in this motion that "the grand jury was misled" is based upon nothing more than that the defendant alleges it.

E. The defendant's motions numbered "5," "6," "7," and "9" are denied as meritless.

F. The defendant's motion numbered "8" is granted to the extent that should the government intend to offer conversations in its direct case that would otherwise be admissible, but might implicate *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), it is hereby directed to identify those conversations.

G. The defendant's motion numbered "10" above is premature and may be renewed should there be a conviction.

## V. *Bellomo, Cafaro and Ragusa*

These defendants by motion and correspondence seek an order directing the government to provide a bill of particulars in accordance with Rule 7(f) Fed. R. Cr. P. A motion for a Bill of Particulars is ubiquitous, made in virtually every criminal case and has spawned liberally thousands of pages, mostly repetitive, in which the purpose to be served by Rule 7(f) is recited. This Court has had more than one occasion to give such recitals. *See, e.g., United*

States v. Crozzoli, 698 F.Supp. 430, 435–36 (E.D.N.Y.1988); United States v. Gotti, 784 F.Supp. 1017, 1018 (E.D.N.Y.1991), aff'd. sub nom United States v. Locascio, 6 F.3d 924 (2d Cir.1992); United States v. Rucker, 32 F.Supp.2d 545, 561 (E.D.N.Y. 1999). To do so yet again, repeating what has been written in the cited cases and the countless cases left un-cited would neither enlighten nor inform experienced defense counsel nor contribute to the development of the law. It will suffice to note that the indictment together with the voluminous discovery provided them, describes with sufficient specificity the crimes with which they are charged to enable them to prepare for trial, avoid surprise and assert a claim of double jeopardy should they be prosecuted again for the same crimes.

In its Memorandum in Opposition to these motions (Gov.Mem.Opp.), the government describes the extensive discovery previously provided in response to demands which, in large part, are boilerplate. On pages 5—8, the government represents that it has "produced voluminous discovery, along with multiple indices ... setting forth, for hundreds of tapes, each tape in which a defendant is mentioned. The government also has supplied numerous transcripts of these tapes, most on computer disks, which can be searched for references to a defendant." The government has also "provided an index of documentary discovery, numbering and describing discovery items."

The decision whether to grant defendants' request for the names of unindicted conspirators, as with requests for Bills of Particulars generally, rests in the sound discretion of the Court and given the voluminous discovery already provided, together with a clear description in the indictment of the crimes with which they are charged, the purposes intended to be served by a Bill of Particulars have been more than met and in the exercise of its discretion this request is denied.

For all the foregoing reasons, these motions are denied. The decisions on motions which have already been decided in which these defendants simply joined are hereby deemed to be applicable to them as well.

### VI. Charles Tuzzo

The motions filed on behalf of this defendant will be addressed in order.

#### 1. Motion for Severance

For all the reasons advanced for denying similar motions on behalf of other defendants, this motion is also denied.

#### 2. Motion to Dismiss the Indictment and to Obtain the Grand Jury Minutes

(a) This motion is predicated upon the assertion that the government possesses insufficient evidence warranting his prosecution. The mere citation of Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956) without more should and does suffice to deny it.

(b) His request for the minutes of the grand jury is so that he can determine whether there are additional reasons to be found there to support his motion to dismiss the indictment. This motion is meritless and is denied. Costello v. United States, supra; United States v. Williams, 504 U.S. 36, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992).

#### Motion to Strike Surplusage

The defendants have moved pursuant to Rule 7(d), Fed. R. Cr. P. for an order that would strike surplusage from the indictment. The paragraphs they regard as surplusage are the first 16 which are captioned "Introduction to all Counts" and which are largely devoted to an over-

view of the Genovese Organized Crime Family which is alleged to be the "enterprise" that is the object of the RICO Counts. The settled principles of law addressing this issue compel the denial.

In *United States v. Rastelli,* 653 F.Supp. 1034, 1055 (E.D.N.Y.1986), Judge Sifton summarized the law relevant to a Rule 7(d) motion to strike as follows:

> Courts in this circuit have held that "[a] motion to strike surplusage will be granted only where it is clear that the allegations are not relevant to the crime charged, and are inflammatory and prejudicial." *United States v. DePalma,* 461 F.Supp. 778, 797 (S.D.N.Y.1978); *see also United States v. Pilnick,* 267 F.Supp. 791, 795 (S.D.N.Y.1967); *United States v. Chas. Pfizer & Co.,* 217 F.Supp. 199, 201 (S.D.N.Y.1963). This standard has been described as "exacting" and, therefore, "only rarely" satisfied. *DePalma,* 461 F.Supp. at 797. Furthermore, it has been held that, although both relevancy and prejudice are pertinent considerations under a Rule 7(d) motion to strike, "if evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken." *DePalma, supra* at 797.

*Rastelli* was cited with approval in *United States v. Scarpa,* 913 F.2d 993, 1013 (1990). ("In RICO cases, courts have refused to strike allegations of organized crime connections that 'serve to identify the enterprise' and the means by which its members and associates conduct various criminal activities.") *See also United States v. Napolitano,* 552 F.Supp. 465, 480 (S.D.N.Y.1982); *United States v. Santoro,* 647 F.Supp. 153, 176–77 (E.D.N.Y.1986), *aff'd. mem.* 880 F.2d 1319 (2d Cir.1989). The paragraphs the defendant seeks to strike serve to identify the purposes which made them relevant and property alleged in *Scarpa.*

SO ORDERED.