FREDERICK W. DUSING and Others, Plaintiffs, *v.* SAMUEL NUZZO and Others, Defendants.

Supreme Court, Special Term, Ulster County, September 6, 1941.

*Charles De La Vergne, Francis Martocci* and *Boudin, Cohn & Glickstein* [*Hyman N. Glickstein* of counsel], for the plaintiffs.

*Henry Hirschberg* and *David Copans,* for the defendants.

BERGAN, J. The defendant labor union is a branch of the International Hod Carriers, Building and Common Laborers' Union, known as Local 17. It is governed, accordingly, by the constitu-

tion and general rules of the International and by its own local constitution. The local constitution (Art. X, § 1) requires annual elections of officers and delegates to be held annually in June. It is conceded no election has been held since 1937. The same constitution (Art. V, § 5) requires that the secretary-treasurer shall at each regular meeting "render a detailed written report showing all monies received by him, and from what sources" and shall (§ 6) at the regular meeting "at least once each month, render a detailed written report showing the financial transactions and standing of the local." In addition section 9 provides that the auditors or trustees shall, at the end of each quarter, audit the secretary-treasurer's books and shall "render a detailed report quarterly to the local showing the financial transactions and condition of the local for the preceding quarter." It is conceded the detailed quarterly reports have not been made, and it is readily found, to the extent that it is not conceded, that the detailed financial reports required by sections 5 and 6 have not been made.

Plaintiffs are members of the local union. This action is for judgment in the nature of a mandatory injunction requiring that an election be held and for an accounting of the union funds. There is singularly little real dispute of fact in the case. The first question of law presented, and it is crucial, is whether the controversy is justiciable, i. e., whether it is a subject requiring any judicial determination of rights. Ordinarily internal disputes in labor unions, as in private associations and fraternal orders, do not present questions for judicial determination.

The concurrence of three elements is necessary for judicial intervention: (a) a property right or its equivalent must be involved; (b) a violation of the constitutional or charter requirements in the act complained of must be shown; (c) resort to the internal processes of the organization for redress must have been exhausted or shown to be futile, which is to say that resort to a court has become an imperative necessity.

By analogy the cases of suspension of membership in labor unions and charter regulations of locals define the principles involved. In *O'Keefe* v. *Local 463 of Assn. of Plumbers* (277 N. Y. 300) the action of the union was sustained because it followed the authority of the constitution and by-laws, notwithstanding hardship to plaintiffs. "The tests of whether the law affords redress for such harm are the legality, good faith and freedom from malice of the union" (p. 309). In *Nilan* v. *Colleran* (283 N. Y. 84) the acts complained of were in conformity with the constitution and rules of the union and were not interfered with.

But where the act of expulsion is illegal, appropriate equitable relief will follow (*Klein* v. *Morrin*, 248 App. Div. 153; affd., 273 N. Y. 553), and the constitution and by-laws of a union measure, in respect of expulsion, at least, the contractual rights of members. (*Polin* v. *Kaplan*, 257 N. Y. 277.) Where the proceedings suspending a member are void, a party aggrieved is not required to appeal within the union, but may apply immediately to the court. (*Shapiro* v. *Gehlman*, 244 App. Div. 238, 243; to the same effect see *Rodier* v. *Huddell*, 232 id. 531; and *Gersh* v. *Ross*, 238 id. 552.)

In view of these principles and of the fact that the constitution of the local union has been clearly violated, plaintiffs have made out a cause of equitable relief requiring an election and an accounting if they have an interest in the subject of which equity will take cognizance.

It is argued that a court of equity will intervene only to protect property rights, and since it has been held that the elections of officers of fraternal societies are not property rights of members, the argument advances to the point that union members stand in the same position of equitable disability in the right to an election of their officers.

But a labor union is not a social club. It is an economic instrumentality conceived in the necessities of making a living under the expansive influence of modern industrial concepts. The individual workman is impotent to deal with a great industrial organization. Aggregates of capital can only be met on equal terms by labor in the aggregate of union organization. The success of the result is dependent upon the responsiveness and the ability of the leader of the union. He is not the arbiter of social pleasure; he is the dispenser of bread and it is not difficult to hold that the union member has an enforcible interest in union elections of which the court in equity will be cognizant. It is as real and as needful of equitable protection, surely, as money or chattels.

The right to membership in a union is empty if the corresponding right to an election guaranteed with equal solemnity in the fundamental law of the union is denied. If a member has a " property right " in his position on the roster, I think he has an equally enforcible property right in the election of men who will represent him in dealing with his economic security and collective bargaining where that right exists by virtue of express contract in the language of a union constitution. Where an election is required by the law of a union, the member denied the right to participate is denied a substantial right which is neither nebulous nor ephemeral.

Thus, as Judge Lewis said for the Appellate Division in *Matter of Pratt* v. *Rudisule* (249 App. Div. 305, 307), if the proceedings

which led up to the determination " were so irregular as to deprive him of his legal rights; and if the &ast; &ast; &ast; determination deprives him of property rights &ast; &ast; &ast; there are appropriate equitable remedies." (See, also, *Rodier* v. *Huddell*, *supra*.)

Quite closely approximating in principle the grounds for complaint asserted here were those considered in *Mayer* v. *Hansen* (260 App. Div. 150) where actions under the purported authority of a revocation of charter were restrained at the instance of individual members and in the absence from the action of the national union as such. Directly in point, I think, is the decision at Special Term in *Irwin* v. *Possehl* (143 Misc. 855). (See, also, *Kaplan* v. *Elliott*, 145 Misc. 863, and *Bricklayers', Plasterers' & Stonemasons' Union* v. *Bowen*, 183 N. Y. Supp. 855.)

Certainly the admitted violations of the fiscal directions of the local constitution, existing over a long period, require that the officers account to the members for their money. The proof indicates that the gross income from dues and fees from 1938 to 1940, inclusive, was about $200,000. The *per capita* and initiation payments due to the International during the period would be about $40,000. It seems incredible that the local union could have expended $160,000 in the period for administering its own local affairs. Yet, on November 26, 1939, the union's bank balance was $16,153.95, and a little over a year later (December 27, 1940) it was $107.93. Since the accounting directions of the constitution, the observance of which could have checked dissipation, have not been followed, and since the fiscal officers have a fiduciary relationship to the members, I think an accounting is the only complete and adequate remedy. The plaintiffs have " an interest in the general funds of the organization." (*Blek* v. *Kirkman*, 148 Misc. 522; see, also, by analogy, *Insurance Co. of North America* v. *Whitlock*, 216 App. Div. 78.)

Defendants contend they have been acting in respect of supervision of elections and of fiscal matters under the direction of the International union. In substance, the International vice-president directed that meetings be suspended, a direction which was subsequently withdrawn, and further directed that actions of the executive board be ineffective until they receive " my official approval " and that the reports of collections and disbursements be made every two weeks " to me." This was in pursuance of letters of October 25, 1937, and November 3, 1937. The specific authority for this action under the International constitution is not apparent, but if there was authority, the prohibition on meetings was withdrawn the following year and acted upon, and the right to the meetings, the elections and the fiscal accounts to members at the meetings was then revived.

I find that the plaintiffs have exhausted whatever remedy exists within the International by application to its officers and that redress has been effectually denied and ignored. Moreover, the International itself has not had an election of officers in thirty years, and defendant Nuzzo, who has been active for years in its affairs, was unable to say by what authority its officers occupy their offices. The futility of applying to an organization thus antipathetic to the elective process for failure of a subordinate union to comply with the directions of its charter in these respects need not be labored.

I see no ground to restrain permanently the prosecution of charges that have been made against plaintiffs. Prosecution will be restrained, however, until the election has been had and the judgment may so provide. The judgment also shall provide that the election follow the directions of the constitution, but the court cannot otherwise undertake to supervise it.

Plaintiffs' application for an additional allowance of costs against defendants is denied.

Plaintiffs may submit a decision in accordance with this memorandum and it thus becomes unnecessary to pass in detail on defendants' proposed findings, the effect of which is now governed by sections 439 and 440 of the Civil Practice Act.

Papers and exhibits should be obtained at this office by the respective parties.