Regis O’Brien, J.
Action No. 1 has been commenced by one Walter C. Wojcik “individually” and in his representative capacity as financial secretary-treasurer of Local 36 of the grain millers’ union, against the defendants, Sam P. Ming and Peter J. Rybka, “individually”, and in their representative capacities as president and vice-president, respectively, of the parent union, viz.; American Federation of Grain Millers, International, affiliated with the American Federation of Labor-Congress of Industrial Organizations.
Action No. 2 has been commenced by one Norman Hassman, “ individually ” and as president of said Local Union 36; and Sam P. Ming, “ individually ” and in his representative capacity as president of the parent union against said Walter Wojcik, and Arsenio Gonzalez, Alfred Haas, Michael Kortask and Charles Pinker, all members of Local 36.
*846 In Action No. 1 the plaintiff demands judgment quashing the proclamation of emergency and the establishment of a trusteeship over the affairs of Local 36.
In Action No. 2 the plaintiffs pray judgment that the defendants be enjoined and restrained, permanently, from violating the terms and conditions of the proclamation of trusteeship, also from disaffiliating, or seeking to cause a disaffiliation, of Local 36; and from using, taking or otherwise interfering with the funds and assets of Local 36 and the International.

Action No. 1.

This is an action against the International Union, which granted the local its charter. The issues involved do not constitute a labor dispute within the meaning of the provisions of either the Taft-Hartley Act (Labor Management Relations Act, 1947, 61 U. S. Stat. 136; U. S. Code, tit. 29, § 141 et seq.) or the State Labor Relations Act (Labor Law, § 700 et seq.).
Here, the relationship between the parties is not that of employer and employee. It is that of members to an agreement.
It has long been the law of this State that the “ constitution and by-laws of an unincorporated association express the terms of a contract which define the privileges secured and the duties assumed by those who have become members.” (Polin v. Kaplan, 257 N. Y. 277, 281; Steinmiller v. McKeon, 21 N. Y. S. 2d 621, 623, affd. 261 App. Div. 899, affd. 288 N. Y. 508.)
At a meeting of Local 36 held on May 24, a trusteeship was created by the International president. He proclaimed that “ after due investigation and careful consideration of the conduct of the affairs of Local 36, it was his opinion, as President of the ‘ American Federation of Grain Millers, A. F. L.-C. I. O. ’ that emergency action is necessary * * * in order to protect the rights and interests of Local Union No. 36 and those of the International and the local union. ’ ’ It was issued pursuant to the provisions of section 6 of article IV of the International constitution. The trusteeship in substance and effect, suspended temporarily the autonomy of the local; places its operational affairs under an executive vice-president as representative of the president; prescribes certain procedural action to be taken during the trusteeship in respect to the conduct of the affairs of the local; expressly preserves the rights and privileges of members in good standing in the local; preserves employment rights of the members; provides for an audit of the books of local since January 1, 1958 to the date of the trusteeship, and directs that a copy thereof be given to each member when completed. There are other provisions wihch it is unnecessary to mention specif *847 ically, except to state that they do not appear to be unreasonable on their face.
Upon delivery of the proclamation of emergency, the trusteeship immediately became effective. Mr. Ming thereupon appointed Mr. Rybka, an executive vice-president of the International, to be his representative.
In Action No. 1, the plaintiff secured a “ Stay Order ” which restrained all action in respect to carrying out the terms of the trusteeship. It became effective when served upon the interested parties. It did not set aside or vacate the trusteeship. Any act done or performed pursuant thereto prior to such service was not vacated or annulled thereby. They are merely held in abeyance. Subsequent acts, of course, are restrained until the decision of this motion asking an order of the court to make such stay permanent.
At the time of the argument of the motion, Action No. 2 was commenced. A temporary restraining order was also issued in that action restraining either party from using the funds of the local in the banks which were made parties-defendant in Action No. 1.
The matters involved in Action No. 2 will be discussed later herein.

Decision in Action No. 1

The court has considered the arguments and the citations submitted by the attorneys for the parties and has also made an independent research of the law which pertains to the issues involved. It is the court’s conclusion therefrom that legal authority would not sustain an order making the temporary ‘ ‘ Stay Order ’ ’ a permanent one pending the trial of the merits of the issues that may be involved.
■ Of course the decision of the motion is not a decision on the merits of the case. The issues involved should be brought to an early determination.
All this motion brings in issue for decision is whether or not the procedures set forth in the constitution and by-laws of the union have been followed in proclaiming the trusteeship and are such procedures on their face fair and reasonable. It should be kept in mind that an agreement (constitution, by-laws and charter, issued to the local) determines the rights and remedies of the parties.
In this ease the president claimed to act pursuant to subdivision 6 of article IV of the constitution. In part, this section provides that “ The President shall have the right to declare emergencies when in his opinion Emergency Action is necessary to protect the rights and interests of the American Federation *848 of Grain Millers, or any Local Union or other subordinate body or officers or members thereof. ’ ’
The proclamation in this case recites that the above-quoted section was the basis for its issuance.
The local disputes the existence of such an emergency and claims that the source of the president’s information was tainted. The credibility of the informant or informants is not for this court to determine on this motion. At best, if it is a justiciable issue, it would be for a trial judge to weigh.
The attorney for the local argued that the president gave no specific instances upon which the emergency was founded. The attorney for the International argued that such statement was unnecessary, although many such instances existed and were considered.
The court has not found nor has any case been cited in which it has been decided that such recital of facts is vital to the validity of the proclamation, and is not so holding. However, in this more enlightened age of labor relations, it seems not inadvisable to comment that the question of such necessity might not have arisen, if the International Union’s president had followed the salutary example set by the authors of the Declaration of Independence in which they proclaimed that “ a decent respect to the opinions of mankind requires that they should declare the causes which impel them to the separation.” This they then proceeded to do in detail.
Courts have repeatedly held that where the acts complained of are in conformity with the constitution and rules of the union, the court will not interfere (Nilan v. Colleran, 283 N. Y. 84). “ Ordinarily it is sufficient to show compliance with constitutional provisions, which, unless contrary to public policy, are the measure of the rights and duties of international and local unions and their members ” (Garcia v. Ernst, 101 N. Y. S. 2d 693, 697, citing Polin v. Kaplan, 257 N. Y. 277, 281, supra, and Ames v. Dubinsky, 5 Misc 2d 380, 407).
The court pointed out in the Garcia case (supra) that the International president, under its constitution, became the prosecutor, judge and sole reviewing authority, which was against public policy. Nevertheless the court held that the facts shown did not “ warrant the issuance of a restraining order in advance of trial” (p. 698). Later and on the same page, the court states “ [u]nder all the facts and circumstances, the court is satisfied that greater damage may result from granting the motion to enjoin the continuance of the trusteeship pendente lite than can possibly result from denying it.”
*849 While “ [t]he courts are loathe to interfere with the internal affairs or management of any union ’ ’ they will not hesitate to do so in a proper case. (Fanara v. International Brotherhood of Teamsters, 205 Misc. 538, 540; Bricklayers’, Plasterers’ & Stonemasons’ Union v. Bowen, 183 N. Y. S. 855, 859.)
Again returning to the procedure adopted by the International, it should be noted that the members of Local 36 in accepting its charter, agreed not to complain that “ the remedies afforded under this Constitution are inadequate ” or “ that pursuit of such remedies would be futile ” (art. VIII, § 2).
Thus, the procedure afforded to the members of Local 36, to bring about a termination of the trusteeship, has been agreed by them to be fair and reasonable.
What are such remedies! (a) Section 6 of article IV mandates that where ‘ ‘ Emergency Action which results in the suspension of the autonomy of a Local Union * * * it shall
be administered in a manner consistent with the democratic policies of this organization, and shall be terminated by the President at the earliest possible date after the emergency, requiring the action, is over.”
In the case of Reiser v. Kralstein (26 L. R. R. M. 2014) where the court granted a temporary injunction pending trial of the issues and upon which the plaintiff’s counsel stated he relied very heavily to sustain his position, it appears that the action arose in April of 1950 and the earliest possible date for an internal review of the matter would be at a general convention which would not be held until September of 1951.
(b) Again referring to section 6 of article IV, if the trusteeship is not terminated by the president by his own action, within 90 days, any “ local union * * * by majority vote at a regular meeting thereof, may bequest the President to terminate the trusteeship and restore autonomy ’ ’. In the event of such request, “ the President shall, * * * fully investigate such request immediately, upon receipt thereof and shall promptly conduct an appropriate hearing ’ ’. In the event the result of the hearing is a decision to continue “ a suspension of local autonomy, it shall be subject to the Appeal provisions of this Constitution” (emphasis mine).
After the lapse of another sis months, if the president’s decision has been upheld on appeal, the local may again request restoration of autonomy, and pursue the same procedure.
Appeals are provided for in article VIII of the constitution. Section 10 covers the procedure, which on its face does not appear to be contrary or repugnant to public policy.
*850 Again it should be remembered that the court is not deciding the merits of the dispute between tbe local and the International. The only issue involved is whether or not the ‘' Stay Order ’ ’ should be continued until the trial or other disposition, of the merits of the controversy (cf. Dusing v. Nuzzo, 177 Misc. 35, mod. 263 App. Div. 59; also Vaccaro v. Gentile, 138 N. Y. S. 2d 872; Cromwell v. Morrin, 91 N. Y. S. 2d 176, particularly p. 181).
In view of the foregoing, the court finds that the “ Stay Order ” herein granted in Action No. 1, restraining the trustees from acting under the proclamation of emergency should be vacated, contingent, however, upon the International furnishing to the Local 36 sufficient security to cover the balances in the various bank accounts seized under the trusteeship, and on deposit in Lincoln National Bank, Liberty Bank of Buffalo, Erie County Savings Bank and Fillmore Savings and Loan Association, respectively.

Action No. 2.

In view of the court’s findings in respect to Action No. 1, the stay order granted in this action is vacated.
Settle order on two days’ notice, in each action.