Liborio BELLOMO, Petitioner,

v.

UNITED STATES of America, Respondent.

No. 03CV2627 (ILG).

United States District Court, E.D. New York.

Oct. 8, 2003.

Flora Edwards, New York City, for petitioner.

## MEMORANDUM AND ORDER

GLASSER, District Judge.

A petition for a writ of habeas corpus has been filed with the Court basing its claim to relief upon 28 U.S.C. § 2241. That relief is to vacate the petitioner's conviction of Count Two of an Information to which he pled pursuant to a plea agreement before the United States District Court in the Southern District of New York and to re-sentence him on Count One of that Information to which he also pled. Count One also charged him with a viola-

tion of the Hobbs Act and the validity of his plea to that Count is not disputed. That Information was captioned *United States v. Bellomo*, S2 96 Cr 430(LAK) and superceded an underlying indictment in which the petitioner was named with nine other defendants. In consideration of his plea to both offenses, the government agreed that the petitioner will not be further prosecuted for: (1) allegedly conspiring to conduct and participate in the affairs of a racketeering enterprise through a pattern of racketeering activity as described in the underlying indictment; (2) conspiring to murder and murdering Ralph DeSimone; (3) attempt to extort and commit labor racketeering with respect to Local 46 and the Mason Tenders District Council; (4) extort the owners of Enviro Express; (5) extort and conspire to extort Young Container and the owners of Pasta Pasta Restaurant; (6) extort Benjamin Villani and Compaction Systems, Inc.[1] The government also agreed, in consideration of his plea, to forego seeking civil or criminal contempt sanctions based upon claimed violations of a specified consent judgment he entered into. The defendant agreed that he would "neither appeal, nor otherwise litigate under Title 28 United States Code Section 2255, any sentence within or below the stipulated Guidelines and statutory range . . . ." The defendant also agreed that because the applicable Guideline range underrepresents the severity of the offenses based upon the relevant conduct charged in the underlying indictment, a ten level upward departure is warranted. On September 22, 1997, he was sentenced by Judge Kaplan to a term of imprisonment of 120 months to be followed by three years of supervised release. Before imposing sentence, Judge Kaplan noted the propriety of his consideration of the trial record in *United States v. Ida*, Government Appendix A, Jan. 7, 2000 Order at 2.

Count Two, the conviction of which he seeks to vacate, charged him with conspiring to commit extortion in violation of 18 U.S.C. § 1951 by "obtaining property, that is, the right of a labor organization's members to free speech and democratic participation in union affairs, as guaranteed by Section 411 of Title 29, United States Code, and to loyal and responsible representation by the members' union officers as guaranteed by Section 501(a) of Title 29, United States Code."

Prior to pleading to that Count, the petitioner and his co-defendants moved that Racketeering Act 7(a) of the indictment from which Count Two of the Information was derived, should be dismissed because the right of free speech and to loyal representation were not "property" within the meaning of § 1951, the Hobbs Act. Their motion was denied by Judge Kaplan. The denial of that motion was later affirmed in *United States v. Bellomo*, 176 F.3d 580, 592–93 (2d Cir.1999), upon appeal of James Ida, the petitioner's co-defendant.

This motion then, in essence, requests this Court to decide that the Court of Appeals was wrong in affirming Judge Kaplan and holding that the rights of the union members which the defendants con-

---

1. The petitioner was named in six counts of a sixty-five count indictment as follows: Count One; RICO conspiracy (Racketeering Acts Two, Six and Seven, Murder of Ralph DeSimone, Extortion of Enviro Express and Extortion/Attempted Labor Racketeering respectively); Count Two—RICO; Count Nine—Conspiracy to murder Ralph DeSimone; Count Ten—Murder of Ralph DeSimone; Count Fourteen—Conspiracy to Extort Enviro Express; Count Fifteen—Extortion of Enviro Express. He was not indicted for the offenses relating to Young Container, Pasta Pasta Restaurant and Benjamin Villani and Compaction Systems, Inc.

spired to extort was property and "that the right is intangible does not divest it of protection under the Hobbs Act." 176 F.3d at 593, citing *United States v. Local 560 of the International Brotherhood of Teamsters,* 780 F.2d 267, 281 (3d Cir.1985).[2] It is prompted by my decision in *United States v. Bellomo,* 263 F.Supp.2d 561 (E.D.N.Y.2003), as will now be explained.

Approximately five years after being sentenced by Judge Kaplan, the defendant, along with seven others, was named in a fourteen count indictment. He was charged, among other things, with conspiring with others "to obtain property, to wit: the right of a labor organization's members to free speech and democratic participation in their union's affairs, ... and to legal and responsible representation by such members' union officers, agents, employees and representatives with the consent of such union members of the International Longshoremen's Association ('ILA') and ILA locals ... which consent was to be induced by wrongful use of actual and threatened force, violence and fear in violation of 18 U.S.C. § 1951." (The Hobbs Act). He was also charged with the substantive offense in Count Three of that indictment. This charge mirrored the charge to which he pleaded guilty and was sentenced in the Southern District except that the labor organization was different in each.

While that indictment was pending, *Scheidler v. NOW,* 537 U.S. 393, 123 S.Ct. 1057, 154 L.Ed.2d 991 (2003) was decided. The Court there held that a woman's right to seek medical services from a clinic, the right of the doctors, nurses or other clinic staff to perform their jobs and the right of the clinics to provide medical services was not "property" which can be "obtained"

within the meaning of the Hobbs Act. Very shortly thereafter, a motion seeking the dismissal of the Hobbs Act Counts pending against them (Racketeering Act One and Count Three) was filed. The movants asserted that *Scheidler* compelled the conclusion that rights of union members described in those Counts were not *obtainable* property within the meaning of the Hobbs Act. In an opinion to which I made reference above, I granted the motion, but wrote "[b]ecause reasonable minds might conclude that the issue is not entirely free from doubt, the government is encouraged to exercise its right to appeal this determination as it may, in accordance with 18 U.S.C. § 3731." 263 F.Supp.2d at 576. The government elected not to do so.

Bellomo's motion is flattering. Insofar as it requests that I vacate the determination made by other judges it plainly implies that reasonable minds could not differ with my decision to apply *Scheidler* to the charged Hobbs Act violation.

### Discussion

In her letter dated May 27, 2003, accompanying a courtesy copy of the petition, counsel advances as a reason for filing the petition in this district, "the similarity of facts and legal issues presented in both cases and because the same defendant is before this court awaiting sentence, it appears that a substantial savings of judicial resources is likely to result by the consideration of this case as a related case. Therefore, it appears that the petition falls within the definition of a related case within the meaning of Local Rule 50.3(a)." That Rule provides in essence that a case is "related" to another when because of the similarity of facts and legal issues a sub-

---

**2.** Neither the district court nor the Court of Appeals was called upon to decide whether the intangible property rights were *obtain-*   *able. See United States v. Bellomo,* 954 F.Supp. 630, 642–43 (S.D.N.Y.1997).

stantial savings of legal resources may result from assigning both cases to the same judge. It requires no discussion to conclude that the Rule was not intended, nor could it have been, to relate a case in one court with a case in another. If, for example, the indictment in both cases were pending at the same time, a Local Rule could not have caused the indictment in the Southern District to be "related" to the indictment here simply because the defendant was charged with a similar crime in each district. That flawed reason for filing this petition here aside, there are a number of discrete issues presented for resolution by this petition and they are:

■■■■ Is this petition one properly brought pursuant to 28 U.S.C. § 2255 and thus to be presented to the convicting and sentencing court, Judge Kaplan, in the Southern District?

In *Jiminian v. Nash*, 245 F.3d 144, 146–47 (2d Cir.2001), the Court decided that:
A motion pursuant to § 2241 generally challenges the *execution* of a federal prisoner's sentence .... In contrast, § 2255 is generally the proper vehicle for a prisoner's challenge to his conviction and sentence, as it encompasses claims that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence ... is otherwise subject to collateral attack." (Emphasis in original).

The challenge here being to the conviction and sentence and not to its execution, then § 2255 should be the medium for the relief he seeks. However, the petitioner having previously filed a § 2255 petition, the filing of this one pursuant to that section would have made it a second or successive petition triggering the gate-keeping function of the Court of Appeals. 28 U.S.C. § 2244(3). A dismissal of that petition would be required unless it relied on a new rule of constitutional law made retroactive by the Supreme Court; or, newly discovered evidence and the facts, if proved and viewed in the light of the evidence as a whole would establish by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found the petitioner guilty. § 2244(2). Neither of those bases could be satisfied by the petitioner who, recognizing that, relies instead upon the savings clause of § 2255 which provides in essence that a petition not otherwise viable shall be entertained if it appears that the "remedy by motion is inadequate or ineffective to test the legality of his detention."

The Supreme Court decision in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), construing the word "using" in 18 U.S.C. § 924(c) to encompass only "active employment of the firearm" which included "brandishing, displaying, bartering, striking with and ... firing or attempting to fire, a firearm," 516 U.S. at 144, 148, 116 S.Ct. 501, gave rise to *Triestman v. United States*, 124 F.3d 361 (2d Cir.1997). In that case, Triestman pleaded guilty to a § 924(c) violation prior to the *Bailey* decision. A second and successive petition pursuant to § 2255 would have been futile for the reasons given above, namely, *Bailey* was neither newly discovered evidence nor did it announce a new rule of constitutional law. The Court decided, however, that serious Eighth Amendment and due process questions would arise if Triestman were denied the right to collateral review, 124 F.3d at 378–79, and "in such circumstances § 2255 is inadequate and/or ineffective to test the legality of [his] detention and that [he] is therefore entitled to raise his claim of actual innocence in a petition for a writ of habeas corpus." 124 F.3d at 380. Because that remedy was available to him,

the Court refused to certify that he could pursue a second or successive § 2255 petition.

One year later, the Supreme Court decided *Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). The Court there reviewed the settled principles precluding collateral attack on a voluntary and intelligently entered guilty plea that was not challenged on direct review and the exception to that principle permitting a defendant to pursue his claim in a habeas proceeding if he can demonstrate that he is actually innocent. The Court then noted that:

> [A]ctual innocence means factual innocence, not mere legal insufficiency. In other words, the Government is not limited to the existing record to rebut any showing the petitioner might make. Rather, on remand, the Government should be permitted to present any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy and would not normally have been offered before our decision in *Bailey.* *In cases where the Government has foregone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges.*

523 U.S. at 623–24, 118 S.Ct. 1604 (internal citation omitted and emphasis added).

*Bousley* is precisely applicable to this proceeding. Following his guilty plea, the petitioner sought to correct the court's findings at sentencing and to obtain the redaction of portions of the presentence report through the medium of a § 2255 petition. The court denied his petition and also denied his request for a Certificate of Appealability. He then filed a notice of appeal together with an application for a Certificate of Appealability which the Court of Appeals denied. While that ap-

plication was pending the Court of Appeals reversed the conviction of petitioner's co-defendant, James Ida, for the murder of one DeSimone and affirmed his conviction on all other counts among which was the Hobbs Act extortion of the right of union members to democratic participation in union affairs. *United States v. Bellomo,* 176 F.3d 580, 592–93 (2d Cir.1999). Following that decision, Bellomo filed again pursuant to § 2255 requesting that he be resentenced, asserting that a ten level upward adjustment attributable to the DeSimone murder was undermined by the decision of the Court of Appeals. That petition, as well as an application for a Certificate of Appealability, was denied by the district court and the Court of Appeals.

The precise applicability of *Bousley* is thus made plain. The petitioner did not challenge his guilty plea on direct review and although he has procedurally defaulted his claim by that failure, this petition, bottomed as it is on his claim of innocence, may be filed. In consideration of his plea in the Southern District of New York, the government forwent more serious charges and as *Bousley* taught, the petitioner's showing of actual innocence must also extend to those charges. Informative in regard to this last teaching is *Lewis v. Peterson,* 329 F.3d 934 (7th Cir.2003), in which Judge Posner wrote:

> The idea behind this rule is that had the government foreseen *Bailey* it would not have dropped the [other] charge and so the petitioner ... would probably have pleaded guilty to that charge instead, and if it was a more serious charge (or we add, no less serious a charge) he would probably have incurred a lawful punishment no less severe than the one imposed on him under the count to which he pleaded guilty, the count that he was later determined to be innocent of by virtue of the Court's interpretation

of section 924(c) in *Bailey.* Of course, it could not be said with certainty that his punishment would have been the same. A defendant may want to plead guilty whether there are two counts in the indictment or one, but if he learns that one is invalid he may hold out for a better deal on the other, since, for example, he doesn't have to worry about consecutive sentences. This is a possibility, surely, but to allow the defendant to use it to get off scot free would be to confer a windfall on him, as the government would not have dropped a good count in plea negotiations had it known that the remaining count was invalid ....

329 F.3d at 936. As has been alluded to previously, in consideration of the petitioner's plea, the government forwent prosecuting him on other charges which were as serious or more serious than the one he seeks to vacate and his showing of innocence must also extend to those charges.[3]

### Venue

■ This petition has been brought here pursuant to 28 U.S.C. § 2241(a) in the belief that jurisdiction lies only in the district where the petitioner is restrained. That belief is derived from the section which provides in essence that "[w]rits of habeas corpus may be granted by ... the district courts ... within their respective jurisdictions" which was construed to mean that a district court lacked subject matter jurisdiction when the prisoner was not confined within its boundaries. *Ahrens v. Clark,* 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948). In 1966, § 2241(d) was enacted which specified that such a writ could also be filed in the federal dis-

trict court in which the judgment and sentence was entered.

In *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), the Court held that the district court in Kentucky had jurisdiction over a habeas challenge to a Kentucky indictment brought by an Alabama prisoner. It observed that the writ doesn't act upon the prisoner who seeks relief, but upon his custodian and "[s]o long as the custodian can be reached by service of process, the court can issue a writ within its jurisdiction requiring that the prisoner be brought before the court for a hearing on his claim ... even if the prisoner himself is confined outside the court's territorial jurisdiction." 410 U.S. at 495, 93 S.Ct. 1123. In *United States ex rel. Sero v. Preiser,* 506 F.2d 1115 (2d Cir.1974), *cert. denied,* 421 U.S. 921, 95 S.Ct. 1587, 43 L.Ed.2d 789 (1975), the court understood *Braden* to mean that the

jurisdictional grant in § 2241(a) was to be construed as co-extensive with the scope of service of process .... The *Braden* Court recognized, further, that the 1966 amendment was motivated, at least in part, by 'a desire to insure that the disputes could be resolved in the most convenient forum', i.e. by considerations traditionally proper to venue .... We think it clear, from both the Court's language and the language of § 2241(d), that it makes more sense to read this section as a provision fixing venue and aimed at problems of judicial administration whose solution lies in the balance of convenience among various courts.

---

**3.** If plea agreements are construed in accordance with principles of contract law, *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), and if *Scheidler* is ultimately decided to reach petitioner's plea to the Count he seeks to vacate, the question may be asked whether that would result in a failure of consideration for that agreement and permit the government to prosecute him on the foregone counts, statutes of limitation and other possible impediments aside.

506 F.2d at 1128. *See also Brooks v. Strack,* 1999 WL 672949 (E.D.N.Y. Aug.25, 1999); *Wang v. Reno,* 862 F.Supp. 801, 812 (E.D.N.Y.1994) ("Given the clear language in *Braden* concerning 'service of process' it appears that the jurisdiction requirement of § 2241 is read to refer to personal jurisdiction over the custodian, rather than the geographical boundaries of the district court's jurisdiction."); *Nwankwo v. Reno,* 828 F.Supp. 171, 175 (E.D.N.Y.1993).

If, given the Circuit Court's understanding of *Braden,* a district court has jurisdiction over a habeas petition if the prisoner's custodian is amendable to the court's process, we are then directed to Rule 4(e)(1) Fed.R.Civ.P., which provides in substance that service may be effected upon a person in any judicial district of the United States in accordance with the laws of the state in which the district court is located and to Rule 4(k)(1)(A), Fed.R.Civ.P., which provides in substance that "Service of a summons is effective to confer jurisdiction over a defendant who could be subjected to the jurisdiction of a court in the state in which the district court is located". *See Eltayeb v. Ingham,* 950 F.Supp. 95 (S.D.N.Y.1997), in which the Court in the Southern District held that it had jurisdiction over the prisoner's custodian in the Western District of New York because he could be reached by service of process.

■ It thus is beyond cavil that the Southern District Court could exercise jurisdiction over this petition since the custodian of the petitioner in this district could be reached by service of process. Should then, this petition be transferred to the Southern District? The answer I am driven to reach is yes, it should for any one or more of the following reasons:

1) As has been noted above, I was cognizant of the possibility that *Scheidler* notwithstanding, other courts may decide that the conduct charged does give rise to a Hobbs Act violation and for that reason alone this petition should be presented to the court in which the petitioner was convicted and sentenced. *See In re Nwanze,* 242 F.3d 521, 525 (3d Cir.2001) and *Preiser, supra.*

2) The petitioner and nine others were named in a Southern District indictment in which he was charged with crimes the government forwent in consideration of his plea to the crimes described above. Judge Kaplan presided over that case, which extended over a period of years, during which he surely acquired a firm grasp of its legal and factual intricacies. He presided over a trial of several of the petitioner's co-defendants and thus heard the government's evidence which resulted in their convictions. Given the showing the petitioner must make of his actual innocence of the charges the government forwent, Judge Kaplan is uniquely suited to preside over this proceeding.

3) In my decision which prompted this motion, I made reference to *Dusing v. Nuzzo,* 177 Misc. 35, 29 N.Y.S.2d 882 (N.Y.Sup.1941), modified on other grounds and affirmed, 263 A.D. 59, 31 N.Y.S.2d 849 (N.Y.App.Div.1941). Justice Francis Bergan, later to become a member of the New York Court of Appeals, wrote in that case that "the union member has [a property right] an enforceable interest in union elections" which is "as real... as money or chattels." 177 Misc. at 37, 29 N.Y.S.2d 882.[4] The decision in that case was

---

**4.** In *United States v. Bellomo,* 954 F.Supp. 630 at 643 (S.D.N.Y.1997), Judge Kaplan wrote that the rights of union members "to participate effectively in their affairs have direct economic value because the advancement of the members' economic interests through collective action is the *raison d'etre* of unions. The history of labor corruption in this country is an eloquent testament to the proposition that the suppression of union democracy has

deemed significant to note because it was not cited in *Scheidler* which relied heavily upon the New York extortion statute after which the Hobbs Act was modeled. *See* Leslie Marshall, Note, *The right to Democratic Participation in Laobr Unions and the Use of the Hobbs Act to Combat Organized Crime,* 17 Fordham Urb. L.J. 189, 204–207 (1989). Although concededly not a Hobbs Act case, *Dusing*'s evaluation of a union member's interest in union elections as being equivalent to money or chattels, has relevance in a determination of the parameters of *Scheidler* and when taken together with the many other cases in this Circuit that extended Hobbs Act protection to the union members' interest in union elections, may lead another court to conclude that the reach of *Scheidler* does not extend that far.

4) Should the petition be granted, the impact, if any, that determination may have upon the continued viability of the plea agreement, would surely be a matter for the Southern District where that plea agreement was entered into.

### *Waiver*

Has the defendant's waiver of his right to "litigate under 28 U.S.C. § 2255" precluded him from pursuing this claim? Although this petition has been filed under § 2241, it is derived from § 2255, that is to say, being a challenge to his conviction and sentence, § 2255 is properly invoked initially, *Jiminian v. Nash, supra,* and it is by virtue of the savings clause in that section that § 2241 becomes applicable.

Assuming then that the unambiguous waiver to litigating under § 2255 is relevant, the question remains, does it bar this claim?

Plea agreements are essentially contracts between the defendant and the government. *See Santobello v. New York, supra.* Waivers of appellate rights are permissible as part of those agreements but "are to be applied 'narrowly' and construed 'strictly against the government.' " *United States v. Hernandez,* 242 F.3d 110, 113 (2d Cir.2001). However, a waiver of appellate rights would not be enforced where the defendant is challenging the constitutionality of the process by which he waived those rights. *Id.* It has also been recognized that a knowing and voluntary waiver will not be enforced if to do so would result in a miscarriage of justice. *See United States v. Andis,* 333 F.3d 886, 891 (8th cir.2003); *United States v. Teeter,* 257 F.3d 14, 25 (1st Cir.2001). A conviction and sentence for an act that the petitioner claims the law does not make criminal "inherently results in a complete miscarriage of justice." *Bousley,* 523 U.S. at 626, 118 S.Ct. 1604 (Stevens, J. concurring in part and dissenting in part, citing *Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974)); *See also Triestman,* 124 F.3d at 378–79 ("we find that serious Eighth Amendment and due process questions would arise ... if we were to conclude that, by amending § 2255, Congress had denied Triestman the right to collateral review in this case.")[5] Whether those principles will be

---

often been closely linked with the ... enrichment of union leaders and those who have corrupted them .... [t]he interests at stake in this case, although intangible ... are, to quote *Tropiano* [*United States v. Tropiano,* 418 F.2d 1069 (2d Cir.1969), *cert. denied,* 397 U.S. 1021, 90 S.Ct. 1258, 25 L.Ed.2d 530 (1970) ] valuable right[s] considered as a source ... of wealth ....' "

**5.** In *In re Davenport,* 147 F.3d 605, 611 (7th Cir.1998) the Court took exception to the holding in *Triestman* "that a federal prisoner can seek habeas corpus if and only if not letting him do so would raise a serious constitutional question. That is too indefinite. A federal prisoner should be permitted to seek habeas corpus only if he had no reasonable opportunity to obtain earlier judicial correc-

deemed applicable within the context of this case, that is, whether the defendant was convicted and sentenced for an act which he claims was not a crime given his view of *Scheidler*, is a determination to be made by the Court in which he was convicted and sentenced.

For all the foregoing reasons, this proceeding will be transferred to the Southern District of New York in the interest of justice, pursuant to 28 U.S.C. § 1404(a), which provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district ... where it might have been brought.

■ This proceeding is a civil action and it might have been brought in the Southern District. The convenience of parties and witnesses is not a factor. Although a literal reading of the statute may suggest that a transfer may be directed for the convenience of the parties and witnesses and not solely "in the interest of justice" that factor alone may be decisive in a given case even if the convenience of the parties and witnesses may point in a different direction. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220–21 (7th Cir.1986); *Donald v. Seamans*, 427 F.Supp. 32, 33 (E.D.Tenn.1976) ("[w]here 'the interest of justice' is paramount, and where the comparative convenience of the transferee and transferor forums is not significant, transfer under § 1404(a) is appropriate."); *Lykes Bros. Steamship Co. v. Sugarman*, 272 F.2d 679, 682 (2d Cir.1959) ("the doubtful omniscience of reviewing courts should not obtrude to override findings of trial courts as to what the interests of justice require."). *See also New York Cent. R.R. Co. v. United States*, 200

---

F.Supp. 944, 946–47 n. 6 (S.D.N.Y.1961) (Friendly, J.); 28 U.S.C. § 1406(a).

In her letter of May 27, 2003, counsel wrote "[s]hould this Court determine that in the interests of judicial economy sentencing on the present case should be stayed pending the determination of this motion, Mr. Bellomo consents to such a stay. In the alternative, he is prepared to proceed with sentencing as scheduled ...."

In the light of that letter, the petitioner shall notify the Court within two days after the receipt of this Order, whether he desires to proceed with sentencing or stay sentencing pending the determination of this motion by the Southern District and by such other Court or Courts that may be solicited to make that determination.

SO ORDERED.

---

tion of a fundamental defect in his conviction or sentence because the law changed after his

first 2255 motion."