Garvin ALCOCK, Petitioner,

v.

Eliot SPITZER, New York State
Attorney General,
Respondent.

No. 03 CV 6161(NG)(JMA).

United States District Court,
E.D. New York.

Dec. 21, 2004.

Garvin Alcock, Alden, NY, Pro se.

Charles J. Hynes, Kings County District Attorney by Solomon Nevbort, Brooklyn, NY, for defendant.

1. The statute provides: "At any time after entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment upon the ground that ... [t]he judgment was obtained in violation of a right of the defendant under the constitution of this state or of the United States."

**OPINION AND ORDER**

GERSHON, District Judge.

*Pro se* petitioner Garvin Alcock applies to this court for a writ of habeas corpus under 28 U.S.C. § 2254, alleging that he is being held in custody in violation of the constitution and laws of the United States pursuant to the judgment of a court of the State of New York. For the reasons set forth below, petitioner's application is denied.

## PROCEDURAL HISTORY

On May 11, 1999, petitioner pled guilty to attempted murder in the second degree, N.Y. Penal Law §§ 110.00, 125.25[1], before the Honorable Abraham G. Gerges of the New York Supreme Court, Kings County, in connection with the shooting of a cab driver during a robbery. Judgment of conviction was entered on May 25, 1999 and petitioner was sentenced, principally, to seven and one-half years in prison.

Petitioner subsequently moved, pursuant to N.Y.Crim. Proc. Law § 440.10(1)(h)[1], to vacate the judgment of conviction entered against him. He claimed that: (1) his plea was not knowing and voluntary because he was not informed that intent was a necessary element of the crime to which he pled guilty, and he did not allocute to intent; (2) his plea was not knowing and voluntary because he was not informed that he would be subject to a mandatory period of post-release supervision following his incarceration; (3) he was denied effective assistance of counsel at the plea proceedings because his attorney failed to inform him that intent is an element of attempted murder in the second degree; (4) he was denied ef-

fective assistance of counsel at the plea proceedings because his attorney failed to inform him that he would be subject to post-release supervision; and (5) he was denied effective assistance of counsel at the plea proceedings because his attorney failed to negotiate a reduced term of post-release supervision. By decision and order dated February 13, 2001, the court denied petitioner's Section 440.10 Motion. *People v. Alcock*, 188 Misc.2d 284, 728 N.Y.S.2d 328 (2001) (Gerges, J.).

Petitioner appealed both the judgment of conviction and the denial of his Section 440.10 motion to the Appellate Division, Second Department. Initially, he raised the issues concerning the knowing and voluntary nature of his plea, but later withdrew those claims and asserted only that his sentence was unduly harsh and excessive. The Appellate Division rejected that claim. *People v. Alcock*, 298 A.D.2d 596, 748 N.Y.S.2d 686 (2d Dept.2002). Petitioner then sought leave to appeal to the New York Court of Appeals, requesting permission to argue that his plea was not knowing and voluntary, as well as that his sentence was unduly harsh and excessive. Leave was denied. *People v. Alcock*, 99 N.Y.2d 625, 760 N.Y.S.2d 106, 790 N.E.2d 280 (2003).

Petitioner now brings a petition for a writ of habeas corpus before this court pursuant to 28 U.S.C. § 2254. The petition raises two claims: (1) that petitioner's plea was not knowing and voluntary because petitioner was never informed that he would be subject to post-release supervision; and (2) that petitioner's plea was not knowing and voluntary because petitioner was never informed that intent was an essential element of attempted murder in the second degree.

## FACTS

On October 25, 1998, New York City cab driver Kevin Daniels was shot in the head and robbed of seventy five dollars and a cell phone while driving his cab in Brooklyn. In connection with this crime, petitioner was indicted, on December 9, 1998, on one count of attempted murder in the second degree, numerous counts of robbery in the first degree and other theft-related crimes, numerous counts of assault in the first degree and other assault-related crimes, and several counts of weapons possession. At his arraignment on January 1, 1999, he pled not guilty.

Pursuant to a plea bargain agreement with the King's County District Attorney's Office (the "D.A."), petitioner moved to withdraw his not guilty plea on May 11, 1999, and to enter a plea of guilty to attempted murder in the second degree. During the allocution, petitioner admitted that, on or about October 25, 1998, he and two friends named Kurt and Booker hailed a cab in Brooklyn. At some point during the cab ride, he ordered the driver to pull over, pointed a gun at the driver, and told the driver to hand over his money. The cab driver resisted, and Kurt pulled out a second gun. In petitioner's words, "Kurt pulled out the gun, pointed it at him. So he stopped wrestling with me, now he start wrestling with Kurt and he tried to wrestle with him. He tried to open the door and wrestle with him too, and the gun went off. Then we ran from the car." Tr. of Plea Allocution at 8.

Before accepting the plea, the court advised petitioner of the constitutional rights that he would waive by pleading, *id.* at 5, and confirmed that petitioner agreed to waive his right to appeal his conviction, *id.* at 9. The court informed petitioner that, in consequence of his plea, if he should be convicted of another felony within ten years, he may be subjected to a mandatory prison sentence, *id.* at 6; if he is not a citizen, his immigration status may be

jeopardized, *id.* at 8–9; and he would be subject to a mandatory surcharge, *id.* at 11. The court promised to sentence petitioner to a determinate prison term of seven and one-half years. *Id.* at 2–3. The court did not inform petitioner that, after being released from prison, he would be required by statute to serve a mandatory period of post-release supervision.[2]

The court asked petitioner whether he had sufficient time to consult with his attorney before deciding to plead guilty. Petitioner answered affirmatively. *Id.* at 4. The court then asked whether petitioner was satisfied with the manner in which his lawyer represented him. Again, petitioner answered affirmatively. *Id.* at 5. Before concluding the proceedings, the court directed petitioner to "[t]ake out a moment, speak to your attorney and then tell me whether everything you've told the Court is true." *Id.* at 9. The court then stated that it was "satisfied that the defendant understands the nature of the charges and the nature of the plea, and the possible consequences of his plea. The defendant has discussed his legal rights with his attorney. The defendant understands he's waiving his constitutional rights and that the plea is voluntary and of his own free will." *Id.* at 10.

In a sworn statement made in support of his Section 440.10 motion, petitioner asserted that his counsel "never explained to [him] that by pleading guilty [he] was admitting an intent to kill the cab driver," and "never explained to [him] what post-release supervision is, how it would affect [his] sentence or how long it is." Alcock Aff. ¶¶ 3–4. His counsel during the plea proceedings, however, an attorney with Brooklyn Defender Services, asserted in response to the Section 440.10 motion that it is his "unfailing practice to review and discuss with [his] clients the substance and elements of each of the charges contained in their respective indictments, before counseling them about whether to enter a plea of guilty," and that it has been his "unfailing practice, from the time of the enactment of Penal Law Section 70.45, to inform each of [his] clients who is offered a determinate sentence in exchange for a guilty plea of the consequences of post-release supervision." Kusevitsky Affirm. ¶¶ 4–5. Counsel further asserted that he had no reason to believe that he deviated from those practices in his representation of petitioner. *Id.* at ¶ 6.

Following the entry of his plea, petitioner was sentenced, on May 25, 1999, to seven and one-half years in prison, as promised by the court. Tr. of Sentencing at 3. On November 8, 2000, petitioner, represented by appellate counsel, moved to vacate the judgment of conviction entered against him. The Section 440.10 motion was denied by Justice Gerges on February 13, 2001. The court held that petitioner's claims concerning the knowing and voluntary nature of the plea were statutorily barred by N.Y.Crim. Proc. Law § 440.10(2)(c), which requires a court to deny a motion to vacate a judgment when "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to defendant's unjustifiable failure to take or perfect an appeal during the prescribed period ...." *See Alcock,* 188 Misc.2d at 286, 728 N.Y.S.2d 328. The court nevertheless "express[ed] its opinion about the merits of

---

**2.** Any person sentenced under New York law to a determinate prison term must be placed on post-release supervision for a mandatory period following his or her incarceration. N.Y. Penal Law §§ 70.00(6), 70.45(1).

the claim[s]." *Id.* Concerning petitioner's claim that he did not allocute to intent, the court asserted that it was permitted to infer petitioner's intent to kill the victim from petitioner's admission that he pointed a gun at the victim's head. *Id.* at 287. Concerning petitioner's claim that he was not advised about mandatory post-release supervision, the court conceded that its failure to inform a defendant about post-release supervision would constitute reversible error where, as here, the combined sentence of incarceration plus post-release supervision exceeds the maximum jail term of which the defendant was informed at the time of the plea. *Id.* at 288–89. The court noted that it would "in the future inform all defendants of post-release supervision." *Id.* at 289. The court also denied petitioner's ineffective assistance of counsel claims on procedural grounds.

Petitioner then filed a notice of appeal from the judgment of conviction with the Appellate Division. By order dated August 8, 2001, petitioner was granted permission to appeal from the order denying his Section 440.10 Motion, and the appeals were consolidated. Initially, petitioner raised four claims in the consolidated appeal: (1) that his guilty plea violated due process because he was not informed that his sentence would include a mandatory period of post-release supervision; (2) that his guilty plea violated due process because the trial court failed to inquire further when his factual recital negated the requisite intent to kill; (3) that he was deprived of the effective assistance of counsel because his attorney failed to inform him that his sentence included a mandatory period of post-release supervision and that intent to kill was an element of the crime to which he was pleading guilty; and (4) that his sentence was unduly harsh and excessive. Before the appeal was decided, however, petitioner's appellate counsel sent a letter to the Appellate Division requesting that several points of petitioner's brief be withdrawn and that the court consider only the last point of his brief, namely, that the sentence imposed was unduly harsh and excessive. Counsel's letter stated that "Mr. Alcock has made a specific written request to have our office withdraw the first three points made in his brief. We apologize for any inconvenience this causes the court." Letter from Heidi Bota, Associate Appellate Counsel, to James Edward Pelzer, Clerk, Appellate Division, Second Dept. (Aug. 6, 2002). The Appellate Division affirmed petitioner's sentence by opinion dated October 28, 2002, noting that "the appeal from the order [denying petitioner's Section 440.10 motion] is dismissed as withdrawn." *People v. Alcock*, 298 A.D.2d 596, 597, 748 N.Y.S.2d 686 (2d Dep' t 2002).

Petitioner, still represented by appellate counsel, then sought leave to appeal to the Court of Appeals by letter dated November 25, 2002. Petitioner supplemented his initial leave application by letter from counsel dated December 20, 2002. Citing N.Y.Crim. Proc. Law § 470.35(1)[3], petitioner requested permission to raise the issues concerning the voluntariness of his plea that were withdrawn from his appeal

---

**3.** The statute provides: "Upon an appeal to the court of appeals from an order of an intermediate appellate court affirming a judgment, sentence or order of a criminal court, the court of appeals may consider and determine not only questions of law which were raised or considered upon the appeal to the intermediate appellate court, but also any question of law involving alleged error or defect in the criminal court proceedings resulting in the original criminal court judgment, sentence or order, regardless of whether such question was raised, considered or determined upon the appeal to the intermediate appellate court."

to the Appellate Division. Leave was denied on March 21, 2003. *People v. Alcock,* 99 N.Y.2d 625, 760 N.Y.S.2d 106, 790 N.E.2d 280 (2003). The certificate denying leave stated that "there is no question of law presented which ought to be reviewed by the Court of Appeals and permission is hereby denied."

Subsequently, petitioner, acting *pro se,* filed the instant petition for a writ of habeas corpus, dated November 6, 2003.

## DISCUSSION

■ A petition for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted unless the petitioner "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). To satisfy this exhaustion requirement, a habeas corpus petitioner must give the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). A habeas corpus petitioner who has defaulted his or her federal claims in state court, either by failing to preserve a claim for state appellate review or by failing to present the claim to the appropriate state forum within the time period prescribed by state law, meets the technical requirements for exhaustion because state remedies are no longer "available" to the petitioner. Under those circumstances, however, the independent and adequate state ground doctrine bars federal habeas corpus review. *Coleman v. Thompson,* 501 U.S. 722, 732, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The doctrine provides that a federal court may not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of

the federal question and adequate to support the judgment. The independent and adequate state law ground may be either substantive or procedural. *Id.* at 729, 111 S.Ct. 2546.

In the habeas context, application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism. *Id.* at 730–31, 111 S.Ct. 2546. Without the rule, a federal district court would be able to do in habeas what the Supreme Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of federal jurisdiction and a means to undermine the State's interest in enforcing its laws. *Id.*

■ Notwithstanding the independent and adequate state ground doctrine, however, a federal court may consider claims raised in a habeas corpus petition that were defaulted in state court if the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims would result in a fundamental miscarriage of justice. *Id.* at 750, 111 S.Ct. 2546.

■ Both of the claims raised by petitioner here were defaulted in state court. Petitioner failed to present the claims to the Appellate Division on direct appeal, which was the only procedure sanctioned by state law in his case, and, as a result, deprived the state courts of a "full opportunity to resolve any constitutional issues." *O'Sullivan,* 526 U.S. at 845, 119 S.Ct. 1728. Accordingly, this court is barred from reviewing petitioner's claims unless he can demonstrate cause for his default and actual prejudice, or that failure to consider the claims will result in a fundamental miscarriage of justice.

## A. Cause and Actual Prejudice

"Cause" in this context must consist of "something *external* to the petitioner;" that is, something that cannot be fairly attributed to him, such as a showing that the factual or legal basis for a claim was not reasonably available, or that some interference by officials made compliance impracticable. *Coleman,* 501 U.S. at 753, 111 S.Ct. 2546 (emphasis in original). No such circumstance exists here. Both of the claims at issue were fully briefed by appellate counsel and submitted to the Appellate Division, but then withdrawn at petitioner's specific request before the Appellate Division had an opportunity to consider them. Thus, the default is fairly attributed to petitioner and is without cause. Since petitioner is unable to demonstrate cause, the court need not reach the issue of prejudice.

## B. Fundamental Miscarriage of Justice

A fundamental miscarriage of justice occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), quoting *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Actual innocence means "factual innocence," and not "mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). Although petitioner did not explicitly raise an actual innocence claim, one may be inferred from his argument that he lacked intent to murder the cab driver and, therefore, cannot be guilty of attempted murder in the second degree.

In *Bousley,* the Supreme Court held that "[i]n cases where the Government has foregone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." *Id.* at 624, 118 S.Ct. 1604. Courts have disagreed about whether a petitioner also must demonstrate actual innocence with respect to foregone charges that are equally serious as the charge to which the petitioner pled guilty. Adopting a literal reading of *Bousley,* the Court of Appeals for the Eighth Circuit has not required such a demonstration, excusing a state procedural default where the petitioner could show actual innocence with respect to the charge to which he pled, but not with respect to another, equally serious charge contained in the original indictment. *United States v. Johnson,* 260 F.3d 919, 921 (8th Cir.2001). In contrast, the Court of Appeals for the Seventh Circuit, focusing on the rationale of *Bousley,* has required that actual innocence extend both to more serious and equally serious charges before a state procedural default may be excused. *Lewis v. Peterson,* 329 F.3d 934, 936–37 (7th Cir. 2003). Explicitly rejecting the holding in *Johnson,* the Seventh Circuit reasoned that:

> The logic of the *Bousley* opinion does not require that the charge that was dropped or foregone in the plea negotiations be more serious than the charge to which the petitioner pleaded guilty. It is enough that it is as serious. For if it is as serious, the petitioner would have gained little or nothing had the government and he realized that the charge to which he pleaded guilty was unsound. Had they realized this they would have switched the plea to the sound charge, and as long as it was an equally serious charge, as it was here, the punishment would probably have been the same . . . .

*Id.* at 937; *see Bellomo v. United States,* 297 F.Supp.2d 494, 499–500 (E.D.N.Y. 2003) (discussing *Johnson* and holding that "in consideration of the petitioner's plea,

the government forwent prosecuting him on other charges which were as serious or more serious than the one he seeks to vacate and his showing of innocence must also extend to those charges.").

This court finds the reasoning of the Seventh Circuit to be persuasive. There is no cogent basis for distinguishing between "more serious" charges and "as serious" charges foregone by the prosecutor when evaluating whether adherence to the independent and adequate state ground doctrine will result in a fundamental miscarriage of justice.

Here, petitioner's indictment included numerous charges of robbery, assault, and weapons possession, including robbery in the first degree and gang assault in the first degree, which were dropped by the D.A. in exchange for petitioner's plea of guilty to attempted murder in the second degree. Attempted murder in the second degree is a class B violent felony under New York law. N.Y. Penal Law §§ 110.05(3)/70.02(1)(a). Robbery in the first degree and gang assault in the first degree are also class B violent felonies. N.Y. Penal Law §§ 160.15, 70.02(1)(a), 120.07, 70.02(1)(a). Thus, they are each as serious as attempted murder in the second degree and carry the same range of penalties.[4] Since petitioner admitted, at the allocution, to holding a gun to the cab driver's head, wrestling with the cab driver, and demanding money from him, while being aided by two other persons who were actually present, and since it is undisputed that the cab driver suffered a gun shot wound to the head during the course of the robbery, petitioner is guilty of both robbery in the first degree and gang assault in the first degree under New York law.[5] Accordingly, the court need not decide whether he is actually innocent of attempted murder in the second degree. His admitted guilt with respect to the first degree robbery and gang assault charges is sufficient to defeat any claim that a fundamental miscarriage of justice will occur if the court does not reach the merits of his habeas petition.

## CONCLUSION

Since petitioner is unable to demonstrate cause for his state procedural default, and is likewise unable to demonstrate that a fundamental miscarriage of justice will result from the court's adherence to the independent and adequate state ground doctrine, petitioner's state procedural default bars this court from reaching the merits of his petition. Accordingly, petitioner's application for a writ of habeas corpus is denied in its entirety. The Clerk of Court is directed to

---

4. N.Y. Penal Law § 70.02(2)(a) provides that "the sentence imposed upon a person who stands convicted of a class B or class C violent felony offense must be a determinate sentence of imprisonment which shall be in whole or half years. The term of such sentence must be in accordance with the provisions of subdivision three of this section." Subdivision 3(a), in turn, provides that "[f]or a class B felony, the term must be at least five years and must not exceed twenty-five years."

5. N.Y. Penal Law § 160.15 provides that: "A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate fight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or (2) Is armed with a deadly weapon; or (3) Uses or threatens the immediate use of a dangerous instrument; or (4) Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm." N.Y. Penal Law § 120.07 provides that: "A person is guilty of gang assault in the first degree when, with intent to cause serious physical injury to another person and when aided by two or more other persons actually present, he causes serious physical injury to such person or to a third person."

close this case. In light of the split among Circuits concerning the *Bousley* issue, the court grants petitioner a certificate of appealability on the issue of whether he can overcome the procedural bar applicable to his claims. On the merits of the claims, he has made the threshold "substantial showing" of the denial of a constitutional right required by 28 U.S.C. § 2253(c).

**SO ORDERED.**